Jesse A. Buss, OSB # 122919
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jessebuss@gmail.com

Tom Buchele, OSB # 081560
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland OR  97219-7799
Tel: 503-768-6643
Fax: 503-768-6642
Email: tbuchele@lclark.edu

Attorneys for Plaintiff League of Wilderness Defenders/Blue Mountains
Biodiversity Project

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | | |
|---|---|---|
| LEAGUE OF WILDERNESS DEFENDERS / BLUE MOUNTAINS BIODIVERSITY PROJECT | ) ) | Case No. 2:16-CV-01648-MO |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF** |
| | ) | **DAVID H. BECKER** |
| v. | ) | **IN SUPPORT OF PLAINTIFF'S** |
| | ) | **PETITION FOR ATTORNEY** |
| SLATER R. TURNER, *et al.*, | ) | **FEES** |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, David H. Becker, declare as follows:

1.      I am an attorney admitted to practice law in the States of Oregon and New York. I make this declaration based upon my own personal knowledge and if called upon to testify, could and would do so competently.

2.      I make this declaration in support of the motion by plaintiff League of Wilderness Defenders/Blue Mountains Biodiversity Project for attorney fees for prevailing in its challenge to the U.S. Forest Service's authorization of commercial logging around Walton Lake in the Ochoco National Forest, obtaining a preliminary injunction, and forcing the U.S. Forest Service to withdraw its authorization of the project. I have reviewed the documentation described in paragraphs 18 and 19 below, and it is my opinion that the hours sought by plaintiff are reasonable and appropriate for the litigation tasks performed in this case. I spent 6.8 hours at my normal hourly rate of $435.00 per hour, for total fees of $2,958.00, in reviewing the documentation and preparing this declaration, as set out in detail in Attachment A, attached.

## GENERAL QUALIFICATIONS

3.      I am an attorney licensed to practice law in Oregon since 2008, and a member in good standing of the state bars of Oregon and New York. I became a member of the New York state bar in 2000. I am admitted to practice before the United States District Courts for the Southern District of New York, Eastern District of New York, Western District of New York, New Jersey, Utah, and Oregon; before the United States Courts of Appeals for the Second Circuit, Fourth Circuit, and Ninth Circuit; and before the United States Supreme Court.

4.      I have been practicing law for 18 years. In January 2011, I opened my own law practice, the Law Office of David H. Becker, LLC, representing and advising public interest environmental organizations involved in protecting imperiled species and public lands throughout

the Western United States, including the Native Fish Society, Friends of the Columbia Gorge, Klamath Siskiyou Wildlands Center, Klamath Forest Alliance, Pacific Rivers Council, Hells Canyon Preservation Council, Basin and Range Watch, Oregon Natural Desert Association, Oregon Wild, Western Watersheds Project, Wild Fish Conservancy, and Center for Biological Diversity.

5. I have gained a reputation as an expert on environmental law issues, presenting on a panel on livestock grazing litigation at the Oregon State Bar's Agricultural Law Section annual Continuing Legal Education seminar in May 2016; presenting on a panel at the Fifth Annual Fisheries and Hatcheries Seminar in Seattle, Washington in September 2014; presenting on two panels at the annual Public Interest Environmental Law Conference ("PIELC") in Eugene, Oregon in March 2017, on a panel at the PIELC in March 2016, on a panel at the PIELC in March 2015, at two panels at the PIELC in March 2013, at two panels at the PIELC in March 2011; co-teaching the Developments in Endangered Species Act Law portion of the Oregon State Bar Environmental Law Section's Annual Continuing Legal Education program in October 2010; giving a presentation on livestock grazing and water quality at the Northwest Water Law Symposium in October 2010; and presenting on the impacts of energy development on wildlife at Lewis & Clark Law School's Animal Law Conference in October 2009 and its Greening the Grid Conference in June 2009. I currently am a member of the Executive Committee of the Oregon State Bar's Environmental and Natural Resources Section.

6. Prior to opening my solo practice, I was staff attorney at the Oregon Natural Desert Association ("ONDA") from January 2008 through December 2010. Prior to joining ONDA, I was staff attorney at Western Resource Advocates in Salt Lake City, Utah.

7. Prior to joining Western Resource Advocates, I served as law clerk to Hon. Garr M. King, District Judge of the U.S. District Court for the District of Oregon, from May 2006 to

August 2006. During 2005 and 2006, I was associated with the Pacific Environmental Advocacy Center ("PEAC")—now known as the Earthrise Law Center—while pursuing an LL.M. degree.

8.      Over the past eleven years, I have served as lead or co-lead counsel on numerous environmental matters, including nearly two dozen appeals, involving litigation under statutes such as the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), Freedom of Information Act ("FOIA"), National Forest Management Act ("NFMA") and Federal Lands Policy and Management Act ("FLPMA"). These include: *Western Watersheds Project v. U.S. Fish & Wildlife Service*, No. 17-98 (D. Or. filed Jan. 20, 2017); *McGuinness v. U.S. Forest Serv.*, No. 16-2406 (4th Cir. filed Dec. 9, 2016); *Clatsop Residents Against WalMart v. U.S. Army Corps of Engr's*, No. 16-35767 (9th Cir. filed Sept. 23, 2016); *Wild Fish Conservancy v. NMFS*, No. 16-553 (D. Or. filed Mar. 31, 2016); *Basin and Range Watch v. BLM*, No. 16-403 (D. Nev. filed Feb. 26, 2016); *Friends of the Columbia Gorge v. Bonneville Power Admin.*, No. 15-72788 (9th Cir. filed Sept. 9, 2015); *Oregon Wild v. Cummins*, No. 15-1360 (D. Or. filed July 22, 2015); *Western Watersheds Project v. U.S. Forest Serv.*, No. 15-218 (D. Idaho filed June 22, 2015): *Oregon Wild v. U.S Forest Serv.*, No. 15-895 (D. Or. filed May 26, 2015); *Our Money Our Transit v. FTA*, No. 14-35766 (9th Cir. filed Sept. 11, 2014); *Bark v. Northrop*, No. 13-1267-HZ (D. Or. filed July 25, 2013); *Bundorf v. Jewell*, No. 13-616-MMD-PAL (D. Nev. filed Apr. 10, 2013); *Native Fish Society v. NMFS*, No. 12-431-HA (D. Or. filed Mar. 9, 2012); *Klamath Siskiyou Wildlands Center v. Grantham*, No. 11-1647-MCE-CMK (E.D. Cal. filed June 17, 2011); *Western Watersheds Project v. BLM*, No. 11-53-HDM-VPC (D. Nev. filed Jan. 25, 2011); *ONDA v. Tidwell*, 716 F. Supp. 2d 982 (D. Or. 2010); *ONDA v. Sabo*, No. 10-1212-CL (D. Or. filed Oct. 4, 2010); *ONDA v. Suther*, No. 09-862-PK (D. Or. filed July 27, 2009); *ONDA v. BLM*, No. 08-1271-KI (D. Or. filed Oct. 27, 2008); *ONDA v. Locke*, No. 05-210-KI, 2010 WL

56111 (D. Or. filed Feb. 14, 2005); and *ONDA v. U.S. Forest Serv.*, No. 03-213-PK (D. Or. filed Feb. 18, 2003). I also have served as lead- or co-counsel in the appeals of *ONDA v. Gammon*, No. 07-35728 (9th Cir. filed Aug. 17, 2007); *ONDA v. BLM*, No. 05-35931 (filed Sept. 9, 2005); *ONDA v. U.S. Forest Serv.*, 550 F.3d 778 (9th Cir. 2008); *ONDA v. Lohn*, No. 07-35700, 2009 WL 123525 (9th Cir. Jan. 12, 2009); *ONDA v. U.S. Forest Serv.*, No. 07-35559, 2008 WL 5233281 (9th Cir. Dec. 16, 2008); *ONDA v. BLM*, No. 11-35143 (9th Cir. filed Feb. 15, 2011); *ONDA v. Or. Cattlemen's Ass'n*, No. 11-35331 (9th Cir. filed Apr. 14, 2011); and *ONDA v. BLM*, No. 11-35759 (9th Cir. filed Sept. 19, 2012).

9. Before obtaining my LL.M. at Lewis & Clark Law School, I was an associate in the Environment, Land and Resources Department of the Newark, New Jersey office of Latham & Watkins LLP. My practice involved litigation against the federal government in cases involving several federal environmental statutes, including the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Resource Conservation and Recovery Act ("RCRA"), and the Clean Water Act ("CWA").

10. Before I worked for Latham & Watkins, I was an associate in the Environmental Practice Group in the New York, New York office of Sidley & Austin for three years. My practice involved litigation and regulatory compliance counseling under several federal environmental statutes, including CERCLA, RCRA, CWA, the Toxic Substances Control Act ("TSCA"), and the Clean Air Act ("CAA").

11. Prior to working for Sidley & Austin, I served as law clerk to Hon. Richard J. Cardamone, Senior Judge, U.S. Court of Appeals for the Second Circuit in Utica, New York, from August 1999 to August 2000.

12. I obtained my J.D. degree *summa cum laude* in public law from Cornell Law

School in 1999, where I was a Note Editor for the Cornell Law Review, and my LL.M. degree *summa cum laude* in natural resources and environmental law from Lewis & Clark Law School in 2006, where I won the Bernard F. O'Rourke Award for outstanding writing and was named to the Cornelius Honor Society. I have authored or co-authored six publications on environmental law, administrative law, and other legal topics, including: Becker, *Changing Direction in Administrative Agency Rulemaking: "Reasoned Analysis," the Roadless Rule Repeal, and the 2006 National Park Service Management Policies*, Environs Envtl. L. & Pol'y J. (December 2006); Becker, *The Challenges of Dam Removal: The History and Lessons of the Condit Dam and Potential Threats From the 2005 Federal Power Act Amendments*, 36 Envtl. L. 811 (2006); and Becker, *Judicial Review of INS Adjudication: When May the Agency Make Sudden Changes in Policy and Apply its Decisions Retroactively?*, 52 Admin. L. Rev. 219 (2000).

13. I have extensive expertise in environmental litigation, which I have been practicing for over 17 years. I also have particular experience in administrative law, federal appellate litigation, and Federal Courts practice by virtue of the year I served as law clerk to Hon. Richard J. Cardamone of the U.S. Court of Appeals for the Second Circuit, my five years thereafter working in two leading law firms' environmental and appellate practices, my eleven years of public interest environmental law practice with PEAC, Western Resource Advocates, ONDA, and as a solo practitioner, and the three months I served as law clerk to Hon. Garr M. King of the U.S. District Court for the District of Oregon.

**SPECIFIC EXPERIENCE AND EXPERTISE IN ATTORNEY FEE MATTERS**

14. As a practicing environmental lawyer who has worked for judges, large law firms, public interest organizations, and as a solo practitioner, I am familiar with the amount of time that is necessary to successfully prosecute environmental cases, with rates charged by

environmental lawyers, and with the market for services performed by attorneys with the level of

experience and expertise of Mr. Buss and Mr. Buchele. This familiarity stems from my having

obtained court-awarded fees in environmental cases and engaging in attorney fee litigation,

obtaining fees through settlement, discussing fees with other attorneys, studying published

surveys of billing rates, and obtaining declarations regarding reasonableness of time sought and

prevailing market rates in cases where my clients have sought attorney fees and costs. Through

my legal experience in environmental cases, from my engagement with the public interest

environmental community (with both other attorneys and client organizations), and from

reviewing attorney fee awards in other cases, I am also familiar with the complexity and

difficulty of environmental litigation, and the specialized skills required to successfully litigate

such cases.

      15.    My clients have obtained several awards of attorney fees for my work in the U.S.

District Court for the District of Oregon between 2008 and 2016, and I have successfully settled

cases involving claims for attorney fees in the Eastern District of California and the District of

Nevada. This Court held that my rate of $315 per hour for 2009 was reasonable for an

experienced environmental law practitioner in a FOIA case in *ONDA v. Locke*, 2010 WL 56111,

at *3 (D. Or. Jan. 5, 2010), and that my rate of $260 per hour for 2008 likewise was reasonable.

*ONDA v. Ryan*, 2011 WL 937589, at *7 (D. Or. Mar. 16, 2011). On reconsideration, this Court in

*Ryan* awarded additional fees for reasonable work performed in 2010 and 2011, basing its award

on rates of $325 per hour for 2010 and $335 per hour for 2011. *ONDA v. Ryan*, No. 08-576-BR,

Opinion & Order at 7 (Dkt # 93) (D. Or. July 13, 2011). This Court in *ONDA v. Tidwell* awarded

fees for my time based on these same rates and also deemed my rates of $350 per hour for 2012

and $365 per hour for 2013 to be reasonable. *ONDA v. Tidwell*, No. 07-1871-HA, Order (Dkt #

563) (D. Or. July 2, 2013). This Court in *Native Fish Society v. NMFS*, No. 12-431-HA, deemed my rates of $335 per hour in 2011, $350 per hour for 2012, $365 per hour for 2013, and $380 per hour for 2014 to be reasonable. *Native Fish Society v. NMFS*, No. 12-431-HA, Opinion & Order (Dkt # 331) (D. Or. Dec. 19, 2014). This Court in *ONDA v. BLM*, No. 08-1271-KI, deemed my rates of $350 per hour for 2012, $365 per hour for 2013, $400 per hour for 2015, and $420 per hour for 2016 to be reasonable. *ONDA v. BLM*, 223 F. Supp. 3d 1147, --, 2016 WL 7408851, at **4–5 (D. Or. Dec. 21, 2016).

16.     I have also testified many times as an expert on attorney fee recovery matters. For example, in 2014, I served as one of the attorney fees and costs experts in *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S Forest Service*, in this Court, an environmental public interest case that involved the impact of pesticides on National Forest Lands. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Service*, No.3:10-cv-01397-SI, 2014 WL 3546858, at *13 (D. Or. July 15, 2014) ("*LOWD*"). The Court cited and relied upon my expert declaration for the Court's conclusion that the case required specialized skill in environmental litigation which was not available elsewhere, and that the plaintiffs were entitled to recover for their attorneys' time at enhanced, market rates under the Equal Access to Justice Act ("EAJA"). *LOWD*, 2014 WL 3546858, at *13. The Court also relied on my declaration in holding that, given the plaintiffs' attorneys' highly specialized skills and years of experience, and the specialized practice area, the plaintiffs' attorneys' requested hourly rates were reasonable. *Id.* at *14–15. The Court also relied on my declaration in finding that the student law clerk rate of $125 per hour sought was reasonable. *Id.* at *15. The Court also awarded the plaintiffs fees for my time and that of their other experts, and found that my rate of $380 per hour was reasonable for an attorney of my experience in 2014. *See id.* at *10, *16. I

have also provided expert testimony on behalf of a plaintiff seeking to recover attorney fees under EAJA in *Gifford Pinchot Task Force v. U.S. Forest Service*, No. 3:13-cv-00810-HZ (D. Or. filed May 13, 2013). I filed expert testimony on behalf of a plaintiff seeking to recover attorney fees under the FOIA in *Columbia Riverkeeper v. U.S. Army Corps of Engineers*, No. 3:13−cv−01494−PK (D. Or. filed Aug. 26, 2013). In that case, this Court recognized my declaration as the "most detailed and well-reasoned" of the three submitted and awarded expert fees at a rate of $400 per hour in 2015. Opinion and Order at 11, *Columbia Riverkeeper* (D. Or. Slip Op. May 5, 2015). I also testified as an expert on attorney fees in *O'Connor v. County of Clackamas*, in which this Court awarded my reasonable hourly rate of $420 per hour in Portland for 2016. Opinion and Order 12, *O'Connor v. County of Clackamas*, No. 11-1297-SI (D. Or. May 31, 2016) (Dkt # 199); *see* Declaration of David H. Becker ¶ 1 & Ex. 1, *O'Connor v. County of Clackamas*, No. 11-1297-SI (D. Or. filed Mar. 18, 2016) (Dkt # 172) (listing the $420 per hour rate and hours spent on that case for 2016). I also testified as an expert on attorney fees in *Center for Food Safety v. Vilsack*, No. 15-1690 (N.D. Cal. filed Apr. 14, 2015), for which I received compensation at my reasonable hourly rate for 2016 of $585 per hour in that forum. I also testified as an expert on attorney fees in *Alliance for the Wild Rockies v. Krueger*, No. 14-35069 (9th Cir. filed Jan. 31, 2014) and *Alliance for the Wild Rockies v. U.S. Army Corps of Engineers*, No. 3:16-cv-01407-HZ (D. Or. filed July 11, 2016), in which there have not yet been decisions on the fee petitions.

17. During the last six months that I worked for Latham & Watkins LLP in Newark, New Jersey (from December 2004 until May 2005), my billing rate as a senior associate was $400 per hour. I retain many professional contacts among former colleagues from my large firm practice and law schools, and am aware of the rates and billing practices that large firms such as

those I have worked at charge their private clients.

<b>REASONABLENESS OF HOURS REQUESTED AND<br>EXCELLENCE OF RESULTS OBTAINED</b>

18.     I have reviewed the District Court docket sheet; the plaintiff's complaint; the

motion for a preliminary injunction, together with the supporting declarations and exhibits, the

federal defendants' opposition to this motion, and the reply in support of the motion; and the

plaintiff's motion for voluntary dismissal, the federal defendants' response to the motion for

voluntary dismissal, and this Court's Orders dismissing the action without prejudice. I also

attended the oral argument on the motion for a preliminary injunction in person on October 6,

2016, and took notes on the proceedings and the Court's reasoning for granting the motion from

the bench.

19.     I have also reviewed the timesheets for the attorneys, law students, and Legal

Fellow who worked on the case, updated as of July 10, 2017, as well the attorneys' draft

declarations. The hour figures cited in this declaration are based on the timesheets I reviewed,

but some of the totals may be adjusted or reduced based on further exercise of billing judgment

by the timekeepers prior to the filing of the motion for attorney fees and costs. Plaintiff's

timesheets indicate that Mr. Buss and Mr. Buchele spent approximately 279 hours billed as

attorney time on the tasks necessary in the District Court to prevail in this case by obtaining a

preliminary injunction against the project, forcing the Forest Service to withdraw the proposed

action, and to cleanly close the case with a voluntary dismissal without prejudice. The timesheets

also show that the attorneys have spent approximately 32 hours thus far in researching and

preparing the plaintiff's claim for attorney fees for discussions with counsel for federal

defendants and preparing a petition for attorney fees (not including time related to the clean

resolution of the motion to dismiss without the inclusion of a schedule for discovery related to

attorney fees). It also appears that the attorneys have excluded about 29.5 hours worked from the time they are seeking as a matter of billing judgment, a reduction of about 8.6%.

20.     The plaintiff obtained everything it sought in this case, namely an injunction against the commercial logging of large and old-growth fir trees at Walton Lake and the withdrawal of the Forest Service's decision authorizing that logging. These excellent results warrant recovery of a "fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). After reviewing the timesheets and filings, it is my opinion that the hours sought by plaintiffs in this case are reasonable and consistent with the number of hours for which this Court and other federal courts have awarded fees in environmental matters with which I am familiar.

21.     As a general matter, this Court has recognized that tasks involved in reviewing factual evidence, researching applicable law, identifying and evaluating potential claims, and developing and drafting a complaint "are tasks that 'rank among the most important an attorney performs in any litigation'" and time reasonably spent on these tasks is recoverable. *LOWD*, 2014 WL 3546858, at *11 (quoting *Lucas v. White,* 63 F. Supp. 2d 1046, 1058–59 (N.D. Cal. 1999)). In this case, plaintiff's pre-complaint work also included numerous tasks associated with the anticipated motion for preliminary injunction, including research specifically related to that motion and assisting standing declarants in preparing their declarations. Plaintiff is seeking an award of approximately 86 hours for work by Mr. Buss and Mr. Buchele up to the filing of the complaint and approximately 67 hours of student law clerk time. Particularly in view of the importance of the pre-complaint research and preparation for the preliminary injunction motion filed just a few weeks after the filing of the complaint, the time appears to have been reasonably spent. For comparison, this Court held that 150 hours (166.7 hours worked less a ten-percent "haircut") was reasonable for researching and drafting the complaint in a civil rights suit. *Prison*

*Legal News v. Columbia Cty.*, No. 3:12–cv–00071–SI, 2014 WL 1225100, at *9 (D. Or. Mar. 24, 2014). Again in view of the fact that plaintiff intended to move for preliminary injunctive relief, it does not appear that Mr. Buchele and Mr. Buss engaged in unnecessarily duplicative work as they coordinated and collaborated in preparing the complaint and setting the groundwork for the preliminary injunction motion.

22.    The approximately 147 hours of time for Mr. Buchele and Mr. Buss and approximately 120 hours of time spent by law students and the Earthrise Law Center's Legal Fellow, Doug DeRoy, on briefing and arguing the motion for preliminary injunction between mid-August and early October 2016 was also reasonable. The briefing and argument involved the interpretation and application of two significant federal environmental laws, and the federal defendants vigorously contested the injunction motion—even though they subsequently declined to defend the Forest Service's decision on the merits. Mr. Buchele and Mr. Buss reduced the overall costs of the litigation by delegating a substantial amount of the work during this phase of the case to law students and the Earthrise Legal Fellow, thus saving on the overall costs of litigation. For comparison, this Court in *Prison Legal News* held that 295.02 hours (327.8 hours worked less a ten percent "haircut") was reasonable for litigating the preliminary injunction motion in that case. *Prison Legal News*, 2014 WL 1225100, at *10.

23.    The time spent since this Court granted the preliminary injunction not directly associated with the request for attorney fees also was reasonably spent. The U.S. Supreme Court has cautioned that "a request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Yet, without any apparent basis in law, federal defendants have insisted that they should be allowed to seek discovery regarding attorney fees. This position complicated the process of dismissing the case and insuring that the plaintiff's ability to seek

attorney fees was not prejudiced. The approximately 28 hours that Mr. Buss and Mr. Buchele spent on this phase of the proceedings were reasonable, as were the approximately 29 hours of law student time spent researching issues related to discovery in fee proceedings and the timing of fee petitions and cost bills related to voluntary dismissal. The unreasonable and indefensible position of the federal defendants regrettably increased the amount of time that plaintiff's attorneys were required to reasonably spend on this phase of the litigation.

24. With respect to the time spent directly on the preparation of materials for fee settlement discussions and this fee petition, based on my review of the principal documents in this case and the plaintiff's attorneys' timesheets, and my own recent experience in negotiating and litigating issues related to attorney fees, it appears that plaintiff's attorneys may have to expend considerable time to fully brief a fee petition to secure reasonable attorney fees—particularly given the position expressed in the federal defendants' response to the motion for voluntary dismissal that they may seek discovery during the fee proceedings. In light of the potential for overlength briefing, possible declarations or other evidentiary proffers by federal defendants, and potentially briefing on a motion to quash discovery, up to an additional 50 to 120 hours to complete briefing of the fee motion would be reasonable (beyond the approximately 32 hours of attorney time and 21 hours of law student time so far expended). For comparison, this Court in *Native Fish Society* also found that 183.2 hours of fees-on-fees time—104.6 hours to prepare a 10-page fee petition and extensive supporting materials, and 78.6 hours to prepare the 20-page reply in support of the fee petition (and additional supporting materials)—was reasonable, and awarded the full requested time for litigating attorney fees. *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Opinion & Order (Dkt # 331); Second Dec. of David H. Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex. B at 39–42 (Dkt # 306); Third Dec. of David H.

Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex. F at 1–6 (Dkt # 329).

25.     It is my experience that litigating cases involving underlying environmental issues and claims under federal law, such as this one, is typically time-consuming and complex, particularly when a case involves the need to seek a preliminary injunction to halt a project to prevent irreparable harm shortly after a complaint is filed. I believe that the time records of the attorneys, Legal Fellow, and law students, the course of the proceedings, and the excellent result obtained, justify the hours they expended and for which they seek to recover fees.

26.     My review of Mr. Buss and Mr. Buchele's timesheets indicate that they did not unnecessarily duplicate tasks, but rather divided up responsibilities for focusing on specific tasks over the course of the litigation. There do not appear to be any unnecessarily duplicative tasks in the attorneys' time records, and most of the tasks were performed independently or sequentially. On the rare occasions that they conferred with one another, it appears that the conferral was beneficial in ensuring that their work was being coordinated, precisely to *avoid* duplication of substantive work. In my experience, discussions regarding strategy, legal theories, and scientific issues among experienced attorneys are among the most productive and important aspects of successfully prosecuting complex federal environmental cases. Therefore, when two attorneys contribute substantively to such discussions, as appears to be the case in the conferrals between Mr. Buchele and Mr. Buss, it is appropriate and standard practice among attorneys I know in Portland to bill for both attorneys' time. The time the lawyers spent conferring and reviewing and editing jointly-drafted pleadings and briefs was important in ensuring their client's ultimate complete success. Mr. Buss served as lead counsel in the case, and he and Mr. Buchele divided tasks so that Mr. Buchele—the higher-rate attorney—spent fewer hours in litigating the case, providing his expertise where appropriate to ensure the ultimate success. Mr. Buchele and Mr.

Buss also effectively and judiciously assigned and oversaw work performed by law students and the Earthrise Legal Fellow to reduce the overall costs of the litigation.

27.     I view the teamwork shown by Mr. Buss, Mr. Buchele, the law students and the Earthrise Legal Fellow not as duplication, but rather as a sound legal business practice among small or solo firm practitioners—the necessary teamwork to effectively apply limited resources to obtain excellent results for a public interest client. The fees requested are modest compared to what a private firm would have charged for the same litigation. As this Court observed in finding reasonable the hours spent by me and three co-counsel in a ten-year litigation against the U.S. Forest Service, "[i]t is safe to say that if a large firm had handled this case, the fees would have been an order of magnitude larger." *ONDA v. Tidwell*, No. 07-1871-HA, Order (Dkt # 563) at 10. The same is true in this case for the work done Mr. Buss, Mr. Buchele, and their team.

**THE RELEVANT MARKET FOR THIS MATTER IS THE PORTLAND MARKET AND THE RATES REQUESTED ARE REASONABLE FOR THE PORTLAND MARKET AND PLAINTIFF SHOULD RECOVER MARKET RATES ABOVE THE EAJA CAP**

28.     Plaintiff seeks the following rates for its attorneys:

| Attorney | 2016 | 2017 |
|---|---|---|
| Tom Buchele (J.D. 1986) | $475 | $475 |
| (years of experience) | (30) | (31) |
| | | |
| Jesse Buss (J.D. 2012) | $250 | $250 |
| (years of experience) | (4) | (5) |

29.     This Court uses the Oregon State Bar Economic Survey ("2012 OSBAR Survey") as its initial benchmark for reasonable attorney rates and requires that fee petitions address the 2012 OSBAR Survey. Message from the Court Regarding Fee Petitions, *available at* https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last visited July 12, 2017).

30.     According to the 2012 OSBAR Survey, 64.1% of the 12,151 Oregon State Bar

members are located in downtown Portland or the Tri-County metropolitan area of Multnomah,

Clackamas, and Washington Counties. OSBAR Survey at 5. The seventeen counties in the

Survey's Eastern Oregon Region contain 6.4% of Oregon State Bar members. *Id*. 1,889 surveys

were returned from the entire state, with 1,153 surveys were returned from downtown Portland

and the Tri-County area, compared to 130 from the Eastern Oregon Region. *Id*. Only 1,009

attorneys reported an area of practice. *Id*. at 11. Six percent of Portland attorneys reported "Real

Estate/Land Use/Environmental Law" as their area of practice, compared to 4% of attorneys in

the Tri-County area and 4% of Eastern Oregon attorneys—about five of the 130 attorneys who

returned surveys from the seventeen counties that comprise the Eastern Oregon Region.

31.     Because Real Estate, Land Use, and Environmental Law are lumped together as a

single practice area, it is unclear from the 2012 OSBAR Survey whether there are any attorneys

in Eastern Oregon—much less in the twelve counties that comprise the Pendleton Division—

who are practicing federal environmental litigation as their specialization. This Court has noted

that the 2012 OSBAR Survey does "not encompass the highly specialized practice of federal

environmental litigation" for *any* practitioners in Oregon. *LOWD*, 2014 WL 3546858, at *15.

Even more relevant for purposes of determining the relevant market for assessing the rates of the

attorneys in this case, the 2012 OSBAR Survey contains *no compensation or rate information*

for attorneys in the "Real Estate/Land Use/Environmental Law" combined practice area in the

Eastern Oregon Region. 2012 OSBAR Survey at 23, 32. Although I have been practicing public

interest environmental law in Oregon for more than ten years, and litigated several cases venued

in the Pendleton Division, I am not aware of any attorney in the twelve counties in the Pendleton

Division who practices federal environmental litigation as their primary practice specialty. Given

the population distribution among the counties in eastern Oregon, it is conceivable that the five Eastern Oregon Region practitioners who classified themselves in the "Real Estate/Land Use/Environmental Law" practice area are located in Deschutes, Jefferson, Hood River, or Wasco Counties—which are not within this Court's Pendleton Division.

32.     Thus there are no "Pendleton market" rates for the highly specialized federal environmental litigation skills that were necessary to successfully prosecute this case. This Court recognized as much in *ONDA v. Tidwell*, a case that—like this one—involved Portland area attorneys representing plaintiffs, with all preliminary injunction proceedings and other hearings occurring in Portland before a judge whose chambers are in this Court's Portland Division. *See ONDA v. Tidwell*, No. 07-1871-HA, Order (Dkt # 563) (D. Or. July 2, 2013). Like this case, *ONDA v. Tidwell* was venued in the Pendleton Division and originally assigned to Magistrate Judge Sullivan, but later reassigned to Chief Judge Haggerty. Recognizing the absence of a market for federal environmental litigation in Pendleton and Eastern Oregon, and the practical reality that the *ONDA v. Tidwell* case was prosecuted in Portland by Portland attorneys before a Portland judge (and defended, in that case, by federal attorneys also based in Portland), Judge Haggerty awarded fees for my time based on Portland market rates, deeming my rates of $350 per hour for 2012 and $365 per hour for 2013 to be reasonable. *ONDA v. Tidwell*, No. 07-1871-HA, Order (Dkt # 563) (D. Or. July 2, 2013). The relevant market for assessing rates in this case is also Portland because all relevant circumstances are the same as in *ONDA v. Tidwell*, except that the government attorney in this case is based in Washington, DC—a market with even higher hourly rates than Portland.

33.     Based on my experience with attorney billing rates in Portland, my own experience with attorney fee recovery described above, and my research on fee opinions issued

by this Court, it is my opinion that the hourly rate requested by Mr. Buchele and Mr. Buss are reasonable and reflect the rates customarily charged in Portland for similar legal services by attorneys of the experience, reputation, and ability that both have. As described below, Mr. Buchele is a highly-respected environmental public interest litigator and Mr. Buss has gained a reputation as a rising star in the Portland area public interest environmental community with recognized expertise in environmental matters.

34.     The hourly rates in the 2012 OSBAR Survey are based on compensation data from 2011. *See* 2012 OSBAR Survey at 1. These 2011 rates would be adjusted upwards for successive years based on inflation, according to the U.S. Department of Labor's consumer price index for urban consumers ("CPI-U") in the Western states of the United States. Bureau of Labor Statistics data show annual CPI-U for 2011 as 227.485, for 2012 as 232.376, for 2013 as 235.824, for 2014 as 240.215, for 2015 as 243.015, for 2016 as 247.705; and for the first five months of 2017 as 254.380 (retrieved from http://data.bls.gov/cgi-bin/surveymost on June 28, 2017); *see Currie v. Shaw*, 3:13-cv-01515-PK, 2014 WL 3514977, at *5–6 (D. Or. June 6, 2014) (adjusting the 2011 rates reported in the 2012 OSBAR Survey using CPI-U for the Western states). The CPI-U for the first five months of 2017 was 2.60% higher than the first five months of 2016, and that percentage increase over the 2016 CPI-U annual figure is used to estimate the inflation-adjusted rates for 2017 listed below.

35.     According to the 2012 OSBAR Survey, "Real Estate/Land Use/Environmental Law" attorneys in Portland on the average charge $332 per hour, at the 75th percentile charge $396 per hour, and at the 95th percentile charge $500 per hour. The inflation-adjusted rates for "Real Estate/Land Use/Environmental Law" attorneys in Portland are:

|  Average  |  75% percentile  |  95% percentile  |

| | | |
|---|---|---|
| 2016 | $361.51 | $431.20 | $544.44 |
| 2017 | $371.03 (est.) | $442.55 (est.) | $558.78 (est.) |

36.     For lawyers with 21 to 30 years of experience, as Mr. Buchele had in 2016, the 2012 OSBAR Survey reported that those lawyers on the average charge $326 per hour, in the 75th percentile charge $399 per hour, and in the 95th percentile charge $470 per hour. Adjusted for inflation, these rates are:

| | Average | 75% percentile | 95% percentile |
|---|---|---|---|
| 2016 | $354.98 | $434.47 | $511.78 |

37.     For lawyers with more than 30 years of experience, as Mr. Buchele had in 2017, the 2012 OSBAR Survey reported that those lawyers on the average charge $340 per hour, in the 75th percentile charge $400 per hour, and in the 95th percentile charge $500 per hour. Adjusted for inflation, these rates are:

| | Average | 75% percentile | 95% percentile |
|---|---|---|---|
| 2017 | $379.97 (est.) | $447.02 (est.) | $558.78 (est.) |

38.     For lawyers with four to six years of experience, like Mr. Buss, the 2012 OSBAR Survey reported that those lawyers on the average charge $210 per hour, in the 75th percentile charge $250 per hour, and in the 95th percentile charge $295 per hour. Adjusted for inflation, these rates are:

| | Average | 75% percentile | 95% percentile |
|---|---|---|---|
| 2016 | $228.67 | $272.22 | $321.22 |
| 2017 | $234.69 (est.) | $279.39 (est.) | $329.68 (est.) |

39.     Based on these figures, I believe that the rates Ms. Buchele and Mr. Buss are reasonable rates for the Portland market in the area for the types of services rendered, given that

the specialized skills and experience of these individuals was necessary to the success of this litigation. Mr. Buchele and Mr. Buss are specialized in environmental law and litigation, which is true even though Mr. Buss does not exclusively practice environmental law. In *LOWD*, that Court also noted that the Oregon State Bar's Economic Survey does "not encompass the highly specialized practice of federal environmental litigation," a fact that warrants—in a case such as this, which involved claims under NEPA and NFMA—rates up to the very top of the ranges the Survey reports for attorneys practicing environmental, land use, and real estate law in Portland. 2014 WL 3546858, at *15.

40.     I have known Mr. Buchele for the past nine years since we both moved to Portland and sat for the Oregon bar exam in February 2008, and have prepared expert declarations on attorney fees and costs in several cases in which his clients prevailed. My impression of him as one of the very best public interest environmental litigators in Oregon has been regularly reinforced by the excellent results that he obtains for his clients and his skill—as Managing Attorney for the Earthrise Law Center—in wrapping law students into a team that litigates efficiently, cost-effectively, and successfully. I have read many of his briefs in other cases and attended his panels at the annual national environmental law conference (PIELC). I regularly rely on the precedents that he has set in the Ninth Circuit and in this Court in cases in which I represent public interest environmental clients, and consult with him regularly on discrete legal questions where his advice helps me better represent my own clients. I have been consistently impressed with the high quality of his work as counsel to environmental plaintiffs working to vindicate the public interest and by his dedication to educating the next generation of public interest environmental litigators—including by serving as co-counsel to a young attorney like Mr. Buss in helping him bring litigation against the federal government and achieve an

excellent result. I have known Mr. Buss since he was in law school and have been impressed by his skills as an environmental lawyer developed as a law student at the Earthrise Law Center and his commitment to practicing environmental law as part of a solo civil litigation practice. Mr. Buss is one of a select few attorneys who has successfully opened and sustained a solo practice directly out of law school that includes a substantial environmental component—by contrast, my own solo practice opened more than ten years after I left law school. From conversations with him about this and other cases, I have been impressed with his growing expertise in federal environmental law and litigation, which he demonstrated as lead counsel in this case.

41.     Environmental litigation is a specialty area justifying an upward adjustment in EAJA fees. I believe that Mr. Buchele and Mr. Buss possess the distinctive knowledge and skills necessary to claim a practice specialty in environmental law that warrants the rates they seek. Mr. Buchele has a reputation in the national public interest environmental law bar as an excellent litigator, and Mr. Buss has a growing reputation in this area. Both have experience in environmental law and litigation commensurate with the time they have been practicing, in particular in cases against the federal land management agencies involving the deleterious effects of major federal actions on our public lands. Mr. Buchele and Mr. Buss possess specialized knowledge and skill in the area of environmental litigation that was necessary to achieve the excellent results obtained in this case.

42.     Only a few attorneys in Oregon know NEPA and NFMA exceptionally well and have the ability, and the wherewithal, to pursue a case such as this. Mr. Buchele, with his extensive experience in litigating NEPA and NFMA cases and his ability to wisely use the student law clerks at Earthrise Law Center to efficiently and inexpensively manage cases, is among that small group, as, now, is Mr. Buss. Neither Mr. Buss nor Mr. Buchele would be

available for the statutory EAJA rate. To the best of my knowledge, having practiced
environmental law for 18 years and in the Portland environmental law community for ten years,
there are no attorneys with the requisite skills and expertise in environmental law available in
Portland, or elsewhere in Oregon, at the statutory EAJA rate.

43.     The rate Mr. Buchele seeks—$475 per hour—is reasonable for an attorney of his
experience, expertise, and stature in the Portland environmental litigation community. In 2014,
this Court awarded a rate of of $450 per hour for Mr. Buchele between 2010 and 2012. *LOWD*,
2014 WL 3546858, at *13. The $475 per hour rate he is seeking for work in 2016 and 2017 is
between the 75% and 95% percentile rates for lawyers with comparable years of experience (and
for attorneys in the "Real Estate/Land Use/Environmental" practice area), but closer to the 75%
percentile rates, particularly for 2017 when Mr. Buchele advanced into the top rate bracket for
attorneys with over 30 years' experience. Given his preeminent position as Managing Attorney
of the Earthrise Law Center and longstanding expertise in federal environmental litigation, the
rate he is requesting is reasonable.

44.     The rate Mr. Buss seeks—$250 per hour—is between the average rate and the
75% percentile rate for attorneys in Portland with four to six years of experience. In 2015, the
District Court for the District of Oregon held that rates at the 75% percentile were reasonable for
an attorney with four to six years of experience and practice specializations and relevant
experience in the areas of law at issue in the case. *Arnold v. Pfizer, Inc.*, No. 3:10–cv–01025–
AC, 2015 WL 4603326, at **2–3 (D. Or. July 29, 2015). Given that the rate Mr. Buss seeks is
about 10% below the 75% percentile rate for an attorney with four to six years of experience, and
given his demonstrated skills and expertise in environmental law and litigation, the $250 hourly
rate he is seeking is reasonable.

45.     Mr. Buchele and Mr. Buss are highly respected for their commitment to public

interest causes, both among public interest lawyers and among environmentalists in this region

and, in Mr. Buchele's case, nation-wide. In my experience practicing public interest

environmental law, I know that cases of this type are risky, and many attorneys will not

undertake them, because the chances for recovering attorney fees at fair market value can be

slim, and any recovery may come long after the work is done. As a solo practitioner, I know that

the risks that Mr. Buss assumed in taking on this case were also substantial, and that there are

only a handful of solo practitioners with the courage to take on a case against the federal

government under our environmental laws and fee-shifting statutes. The work involved in such a

case is both complex and time intensive—but extremely important in this case to vindicate the

public interest in ensuring that any commercial logging, particularly near a beautiful location like

Walton Lake, is undertaken in strict compliance with the Eastside Screens and NEPA. The

unpredictability and delay in recovering fees means that many attorneys simply will not or

cannot afford to take these cases. The organizations and individuals who seek attorneys to

undertake these kinds of cases often have little money, and have a hard time finding able and

experienced attorneys such as the ones who represented the plaintiff in this case. Consequently,

these types of attorneys are in high demand, and their resources are often stretched thin.

Attorneys such as Mr. Buss and Mr. Buchele, who represents citizens and citizens' groups in

cases such as this perform an extremely valuable public service, which Congress has recognized

and encouraged by authorizing awards of attorney fees to prevailing parties through the EAJA.

46.     This case presented complex factual issues related to the federal defendants'

obligations to comply with NFMA and NEPA in approving commercial logging at Walton Lake.

The time that Mr. Buss and Mr. Buchele spent was necessarily and reasonably spent to vindicate

their client's interests.

47.     Despite their skill and the risk involved in such cases, Mr. Buchele focuses his practice on representing citizens and citizens' groups in litigation related to environmental issues, and Mr. Buss devotes a substantial amount of his practice to such work, limiting their practice and income in order to do so. These attorneys rely on fee recovery from successfully concluding such litigation and obtaining fees at fair market rates under the fee-shifting statutes. I am personally very familiar with this process, having both been successful in helping clients prevail and recover attorney fees, but also in unsuccessful litigation that has consumed several years but for which no attorney fees were recovered. Sometimes this risk pans out, but often it does not. Because of the limited resources of environmental plaintiffs, these cases are in effect done on a contingent fee basis, with the only prospect of getting fair compensation for the work that was done being a full award of fees under the EAJA. Because these attorneys possess specialized knowledge and skills that were necessary to the success in this case, the plaintiff should have an award of their full reasonable market rates above the EAJA statutory cap.

## RATES AND TIME FOR LAW STUDENTS AND LEGAL FELLOW

48.     Finally, the rate requested for student law clerks—$130 per hour—is reasonable for the Portland market, and is at the low end of reasonable market rates for paralegal and law clerk services. This Court awarded rates of $115 and $125 per hour for paralegal work in 2013, noting "many awards in the $100 to $125 per hour range. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1249 (D. Or. 2013). In *Native Fish Society v. NMFS*, No. 12-431-HA, the Court awarded $130 per hour for work by law clerks for work performed in 2012, 2013, and 2014. *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Opinion & Order at 6–7 (Dkt # 331); Second Dec. of David H. Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex.

C at 1–6 (Dkt # 306); *see* Third Dec. of David H. Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex. F at 1–6 (Dkt # 329).

49.     Plaintiff seeks $140.00 per hour for Earthrise Legal Fellow Doug DeRoy, who graduated from Lewis & Clark Law School in 2016 and was admitted to the Oregon State Bar in May 2017. The time billed in this case was after he graduated from law school—so he was more experienced than a student law clerk—but before he was admitted to practice. For lawyers with zero to three years of experience, the 2012 OSBAR Survey reported that those lawyers on the average charge $182 per hour, in the 75th percentile charge $198 per hour, and in the 95th percentile charge $246 per hour. Adjusted for inflation, these rates are:

|      | Average | 75% percentile | 95% percentile |
|------|---------|----------------|----------------|
| 2016 | $198.18 | $215.60        | $267.87        |

Given that Mr. DeRoy, as a post-graduate Legal Fellow, was more experienced and able to handle more substantive tasks than the law students, and the fact that the rate sought ($140.00 per hour) is well below what an average attorney with no experience charges in Portland, the requested rate is reasonable for Mr. DeRoy's work.

50.     Finally, the time sought for student law clerks and the Legal Fellow is reasonable in the context of this case. By relying on law students and Earthrise's Legal Fellow extensively, at rates roughly one-half to one-fourth those of the two attorneys who led this case, plaintiff's legal team reduced the overall cost of this litigation. I note also that plaintiff is seeking only approximately 233 hours for the student law clerks and Legal Fellow of the approximately 323 hours these students and recent graduate worked on this case, which appears to be a reasonable reduction. The overall amount of time that plaintiff is seeking for the attorneys, law students, and Legal Fellow is reasonable and consistent with the requirements of the case and the excellent

results obtained.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of July 2017 in Portland, Oregon.

_____

David H. Becker (OSB # 081507)
Law Office of David H. Becker, LLC
833 SE Main Street # 302,
Portland OR 97214
Tel: (503) 388-9160
davebeckerlaw@gmail.com