Jesse A. Buss, OSB # 122919
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jessebuss@gmail.com

Tom Buchele, OSB # 081560
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland OR 97219-7799
Tel: 503-768-6643
Fax: 503-768-6642
Email: tbuchele@lclark.edu

Attorneys for Plaintiff League of Wilderness Defenders/Blue Mountains Biodiversity Project

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LEAGUE OF WILDERNESS DEFENDERS / BLUE MOUNTAINS BIODIVERSITY PROJECT,<br><br>        Plaintiff,<br><br>    v.<br><br>SLATER R. TURNER, *et al.*,<br><br>        Defendants. | Case No. 2:16-CV-01648-MO<br><br>**DECLARATION OF RALPH O. BLOEMERS IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEY FEES** |

I, RALPH O. BLOEMERS, state and declare:

    **1.**    I make this declaration in support of Plaintiff's petition for attorney fees. As set forth in detail below, it is my opinion that the hours and rates requested are reasonable and appropriate, given the complexity of the facts and the law involved in this case.

## QUALIFICATIONS

2.	I am an active member in good standing of the state bars of both Oregon and Washington, as well as the bars of the U.S. Court of Appeals, Ninth Circuit, and U.S. District Courts for the District of Oregon, the Western District of Washington and the Eastern District of Washington.

3.	I graduated cum laude in 1998 from the Willamette University College of Law in Salem, Oregon. I focused my studies on environmental and natural resources law. I was a member of the Willamette Law Review. I also studied abroad at the Rijksuniversiteit de Rechtsgeleerheid (Royal University of Law) in Leiden, The Netherlands. I received a certificate of merit, cum laude for my work in International Moot Court. Throughout law school, I focused my studies on environmental and natural resources law. I worked at the Nature Conservancy of Colorado as a legal intern in the summer of 1996. I was on a winning team in the regional Pace Moot Court Environmental Law Competition and traveled to upstate New York to compete for that competition. I received an award for the highest grade in Environmental Law from Professor Susan Smith. I completed an externship with 1,000 Friends of Oregon in 1997. I worked as a summer associate at Stoel Rives, LLP in the summer of 1997 and while there I worked on environmental, natural resources and land use law.

4.	I have gained extensive experience in the field of trial practice, litigation and public interest environmental law. For over 15 years, I have litigated a wide variety of cases in state and federal court throughout Oregon, Washington and California. I have been involved in litigating a number of cases against federal agencies under the National Environmental Policy Act (NEPA), the Federal Lands Policy and Management Act (FLPMA), the National Forest Management Act (NFMA), the Administrative Procedure Act (APA) and other similar laws.

**5.** I am a full-time staff attorney with the Crag Law Center (www.crag.org), an organization that provides legal services to local residents, citizen groups, recreation organizations and conservation groups for free or as close to free as possible. The Crag Law Center is a resource for non-profit organizations that need but cannot afford legal representation at regular market rates. The Crag Law Center also works with law students and involves them in complex environmental and natural resource issues. I focus my work on public interest environmental work for non-profit conservation organizations. I have litigated complex issues regarding compliance with the Clean Water Act, the Endangered Species Act, the National Environmental Policy Act, the National Forest Management Act and the standards in the Northwest Forest Plan. I have been practicing for over fifteen years in both state and federal court in Oregon, Washington and the Ninth Circuit Court of Appeals.

**6.** I have been and am lead or co-counsel on a number of cases against federal agencies for violating environmental laws and have secured results in Or. Natural Res. Council v. United States BLM, No. 05-35245, 2006 U.S. App. LEXIS 29688, July 28, 2006 (December 4, 2006) (Reversal of District Court, prevailed on the merits of NEPA claims); League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith, CV. 04-1595-PK (Lead Case), CV. 04-1628-PK, 2006 U.S. Dist. LEXIS 89923, (D. Or. December 12, 2006) (Preliminary injunction enjoining logging of old growth forest and that preliminary injunction was maintained until controversial mortality guidelines amended and project ultimately pulled); League of Wilderness Defenders-Blue Mts. Biodiversity Project v. Smith, CV. 04-1595-PK (Lead Case), 2006 U.S. Dist. LEXIS 16847 (D. Or. March 23, 2006) (Project remanded for administrative appeal); Bark v. Larsen, Civil No. 02-904-HU, 423 F. Supp. 2d 1135; 2006 U.S. Dist. LEXIS 16759, (D. Or. March 17, 2006) (Project pulled and settlement obtained that has led

to proposal to protect area as additions to Mt. Hood Wilderness and Crystal Springs Watershed Protection Area); League of Wilderness Defenders -- Blue Mts. Biodiversity Project v. United States Forest Serv., Civil No. 04-488-HA, 2004 U.S. Dist. LEXIS 24413 (D. Or. November 19, 2004) (Court held that Forest Service's heavy reliance upon a habitat database model in "salvage logging" environmental impact statement fell short of NEPA's standards where the database was inapplicable to post-fire projects.); Or. Natural Res. Council Fund v. Brong, Civil No. 04-693-AA, 2004 U.S. Dist. LEXIS 23251, (D. Or. November 8, 2004) (Court held that BLM's authorization of "salvage logging" on old growth habitat in wildfire affected lands was permanently enjoined as arbitrary and capricious in light of the agency's failure to comply with NW Forest Plan standards and provide adequate cumulative impacts analysis under NEPA.); League of Wilderness Defenders - Blue Mts. Biodiversity Project v. Marquis-Brong, Civil No. 02-75-HA, 259 F. Supp. 2d 1115 (April 18, 2003) (Court held that BLM violated NEPA when it allowed salvage logging of areas burned in wildfires where the BLM's environmental assessment for the burned area was inadequate, and the BLM failed to prepare an EIS.); Cascadia Wildlands Project v. United States Fish & Wildlife Serv., CV 02-747-RE, 219 F. Supp. 2d 1142; 2002 U.S. Dist. LEXIS 16015 (D. Or. August 7, 2002) (Court preliminarily enjoined the United States Forest Service from proceeding on timber sales pending further determinations of the impact of the sales on the endangered bull trout); League of Wilderness Defenders - Blue Mts. Biodiversity Project v. Zielinski, Civil No. 02-75-HA, 187 F. Supp. 2d 1263, 2003 U.S. Dist. LEXIS 7153 (D. Or., April 2002) (Preliminary injunction granted because plaintiffs showed a fair chance of success on the merits that logging operation was likely to cause environmental damage, and injunction was issued.); Or. Natural Res. Council Fund v. Brong, 492 F.3d 1120 (9th Cir. Or. 2007) (Court found that the project's components for retention of snags, or dead and dying trees,

and for research logging were inconsistent with the NFP and, thus, violated FLPMA and that the BLM failed to take the requisite "hard look" at the impact the Project would have on the environment because it failed to analyze the impact of the Project when combined with previous fire suppression efforts, salvage logging on interspersed private lands, and salvage logging on deferred watersheds); Lands Council v. Martin, 479 F.3d 636 (9th Cir. Wash. Mar. 2, 2007)(9th Circuit Court of Appeals reversed district court's denial of preliminary injunction on NFMA claim and remanded with instructions to grant immediately a preliminary injunction to prohibit the logging of any "live" tree greater than or equal to 21" diameter at breast height that existed in the area.); Oregon Natural Desert Association v. United States Forest Service, 303 Fed. Appx. 517 (2008) (Holding that Forest Service's issuance of grazing permits and annual operating instructions (AOI) on land allotments in national forest was reviewable under Administrative Procedure Act (APA)); Lands Council v. Martin, 529 F.3d 1219 (9th Cir. 2008)(9th Circuit Court of Appeals held that the Environmental Impact Statement's discussion of the effects of the proposed logging in the roadless areas did not comply with the requirements of the NEPA, and it remanded the action for further proceedings). Central Oregon LandWatch v. Connaughton, 905 F. Supp. 2d 1192 (2012) (preliminary injunction issued against United States Department of Agriculture - Forest Service's approval of a permit for a water diversion pipeline for violation of NEPA procedures and NFMA standards).

**7.** From 2002 to 2017, I have handled numerous administrative appeals with the Forest Service involving projects in Oregon and Washington that have resulted in amicable resolution through modification or additional analysis of existing projects. Since 2001, I have assisted a broad coalition of conservation organizations that are working to preserve the high alpine flanks of Mt. Hood on the Mt. Hood National Forest which have resulted in global

settlements and been enacted into public law. Omnibus Public Lands Act of March 30, 2009 (settlement to protect North side of Mt. Hood as Wilderness and protect the Crystal Springs Watershed as part of the congressional mandate in the Act that the Forest Service complete the trade of land, the Cooper Spur Ski Area operation, the Inn at Cooper Spur and the associated buildings and infrastructure for approximately 120 acres of land in Government Camp.) In relation to the work on Mt. Hood, I have handled complex land use matters in Oregon state court. Hood River Valley Residents' Comm., Inc. v. Bd. Of County Comm'rs, A118889, 193 Ore. App. 485; 91 P.3d 748; 2004 Ore. App. LEXIS 639, (June 2, 2004). (Court reversed dismissal of petition for writ of review challenging county land exchange agreement with limited partnership; land exchange decision was subject to challenge by writ of review.).

**8.** I have handled state constitutional and land use matters resulting from the property rights initiative in Oregon known as Measure 37 that became law in 2004 and then was fixed by ballot Measure 49 which passed in November of 2007 and became law in December of 2007. In September 1, 2010, I obtained a favorable ruling for a client in Friends of Yamhill County, Inc. v. Board of Commissioners of Yamhill County, 237 Or App 149, 238 P3d 1016 (2010). Since then, I have prevailed in seven other cases in the Oregon Court of Appeals seeking to enforce Oregon ballot Measure 49 for various clients. In October 2011, I obtained a favorable ruling for a client from the Oregon Supreme Court in Friends of Yamhill County, Inc. v. Board of Commissioners of Yamhill County, 351 Or 219, 264 P3d 1265 (2011) which upheld but modified the Court of Appeals decision in important respects in my client's favor.

**9.** I have handled cases in federal court in Oregon and California involving enforcement of the Clean Water Act and challenges to management projects on our national forests. For example, I received a favorable ruling from the District of Oregon in a case

involving unpermitted and illegal mining operations in a tributary of the Rogue River. <u>Rogue Riverkeeper v. Bean</u>, 2013 WL 1785778 (2013) (entering motion for default judgment, issuing injunction relief, approving civil penalties and awarding attorneys fees and costs). I work with three other staff attorneys in the Crag Law Center and I am responsible for providing assistance and/or oversight on a variety of state and federal matters that are currently pending.

10. From 1998 to 2001, I worked at Stoel Rives, LLP in their corporate securities, venture finance and intellectual properties practice groups. I was responsible for complex venture finance deals for start-up technology companies and I worked on patents, trademarks, copyrights and trade secret issues for all kinds of corporate clients. My regular hourly rate when I left Stoel Rives almost eleven years ago in 2001 ranged from $180 to $220 per hour for regular work. My specialty rate was sometimes higher for particular expertise. I left Stoel Rives to found the Crag Law Center (formerly the Cascade Resources Advocacy Group), a non-profit charitable law center that serves clients in Oregon, Washington and Alaska.

11. Since I regularly litigate cases under public interest fee shifting statutes, I am familiar with the billing rates throughout the Pacific Northwest area and familiar with attorneys in private practice at Stoel Rives, Davis Wright Tremaine, Perkins Coie, Miller Nash, Tonkon Torp, Lane Powell and Schwabe Williamson and Wyatt. While I was at Stoel Rives, I represented private clients who paid the firm market rates for my services. Based on my past work and my current specialty rates, I am very familiar with the hourly billing rates for attorneys of a variety of years and skill who practice environmental law, particularly in the Northwest. I am also familiar with the billing rates of attorneys of comparable years of expertise in other areas of private practice in the Portland.

12. I am familiar with the 2012 Oregon State Bar Survey on billing rates, and I concur with the assessment of David Becker set forth in his declaration filed in support of this Fee Petition regarding the reasonableness of the requested rates in light of this survey. I have also reviewed the National Law Journal's annual survey of big firm billing rates. Law firms with Portland offices appear in the survey, showing averages and ranges of partner and associate hourly rates for their offices in Portland and neighboring western cities. As stated above, I am personally familiar with the rates obtained by attorneys at local firms in Portland, from larger corporate law firms, niche specialty technology firms and plaintiffs' litigation firms. The OSB and NLJ surveys provide significant evidence of the value of this area of expertise on the market.

13. In addition to my work for the Crag Law Center, I have taught Forest Law & Policy at Lewis and Clark College as an adjunct professor of law for a number of years from 2005 to 2011. As a service to the State of Oregon, I sat on the Oregon Governor's Federal Forestland Advisory Committee and the associated Implementation Working Group. I am engaged in a collaborative process to increase resiliency and reduce risks to Oregon's landscapes in the face of local, regional and global challenges.

## HOURS REQUESTED

14. I have reviewed and become familiar with the docket for this case. I have access to the Electronic Case Filing system and I have reviewed the complaint, the briefing and the filings in this case. I have carefully reviewed the time sheets that detail all of Plaintiff's attorneys' time spent on this case, as well as the time spent by the legal fellow and the law student clerks on this case. In my opinion, the hours sought by Plaintiff are reasonable and appropriate.

15. The National Environmental Policy Act, the National Forest Management Act and the rules and regulations implementing these statutes are complex and require specialty-focused practice and particular skill and knowledge. Preparing for a federal case involving NEPA, NFMA and specific Forest Plan standards and prosecuting it takes substantial time, expertise and careful research. Counsel for Plaintiff spent time undertaking significant research, gathering factual data, and preparing all the pleadings in this case. Counsel for Plaintiff also spent significant time reviewing and responding to Defendants' filings in this case. Plaintiff's prevailed on its motion for preliminary injunction, and secured the complete withdrawal of the decision immediately thereafter. The result that Plaintiff obtained is the relief Plaintiff sought in this case, and litigated to achieve.

16. I have reviewed the time records for Mr. Tom Buchele, Mr. Jesse Buss and their legal fellow and law student clerks on this case. The number of hours that Plaintiff seeks is reasonable and has been more than adequately adjusted to account for any redundancy or overlap in work. Mr. Buchele and Mr. Buss have assured me that they have attempted to remove any hours that appeared to be duplicative or excessive. I have carefully reviewed each and every time entry submitted by each timekeeper in this case. I understand they have significantly adjusted the time sheets provided by the legal fellow and law student clerks. From my review, the hours requested were spent prosecuting the legal issues in this case on which Plaintiff prevailed. Given the facts and the complexity of the case, the amount of hours spent is less than I would anticipate for this case.

17. I have included the time I have spent preparing this declaration and reviewing the motion for fees and associated materials.

## RATES REQUESTED

18.     I have reviewed Plaintiff's time sheets, declarations of Plaintiff's attorneys regarding their experience, and I conclude that the rates Plaintiff seeks are well within the range of market rates charged by attorneys in the relevant market of Portland, Oregon who represent clients for the same or similar work. Based on my previous statements regarding my knowledge of billing rates in the Portland, Oregon area and my experience, I have determined that Plaintiff has requested appropriate and reasonable hourly rates for all attorneys, the legal fellow, and student law clerks working on this case. The attorneys working on this case have significant experience representing public interest groups and each have extensive litigation experience.

19.     If anything, the requested rates are less than market rate for the services that Mr. Buchele and Mr. Buss have rendered in this case, given their particular skills. I have known Mr. Buchele since 2008 and I have known Mr. Buss since 2012. I have had considerable exposure to the work of these two attorneys. I am pleased to say that Mr. Buchele has a reputation in the legal community as a highly skilled and tenacious environmental litigator, and that Jesse is developing one too. Mr. Buchele has considerable experience in litigating livestock grazing, wilderness, and protected species cases such as this against the United States Forest Service.

20.     My opinion is based in part on the fact that Mr. Buchele and Mr. Buss possess specialized knowledge and skills in the NEPA, NFMA, the APA and in a federal environmental practice, particularly as those laws address the regulatory, public notice and comment requirements in light of the particular provisions of the NEPA, NFMA, and the APA. These skills were clearly necessary to effectively prosecute this case. Mr. Buchele is known for his specialty in this field, and Mr. Buss has significant experience in this area that he gained while in law school and since entering into private practice. Mr. Buchele focuses his practice in this

particular specialty area of the law, and this is one of Mr. Buss specialty practices. The legal fellow and law student clerks working on this case each have received specific education in natural resources and environmental law from their respective law schools.

21. Despite their skill and reputation, counsel for Plaintiff agreed to take on this case on a fee recovery basis. Counsel provided this arrangement to be able to provide access to justice to Plaintiff. There are a limited number of experienced attorneys willing to take on this difficult line of work. These cases are essentially done on a contingent basis with the only prospect of getting fair compensation being an award of fees under the applicable law.

22. Cases of this type are in my opinion also very risky. Most attorneys will not undertake them, because the cost of pursuing the case is high. The work is quite complex and very time intensive. Unfortunately, the public must take repeated actions to enforce the most basic provisions of these complex laws. People who seek attorneys to undertake these kinds of cases often have little money, and they have a hard time finding able and experienced attorneys like the attorneys who worked on this case who are in a position to invest the time and effort in pursuing such a case. In my view, attorneys who represent citizens and non-profit groups in cases such as this perform a valuable public service and should be compensated equally to their peers in the large corporate law firms. Likewise, Congress has recognized the value of this work through its enactment of the attorney fee recovery provisions in the EAJA.

23. When I factor in the specific litigation knowledge and skills required to prevail in this case, the complex nature of the facts, the course of the litigation, and the particular risks that private practitioners take in bringing these cases, it is my opinion that an upward enhancement of fees, to take into account the risk and public interest nature of the case is justified. I base my recommendations on the following:

A. There are very few litigators who possess the specialized skills and willingness to litigate a case like this under the National Environmental Policy Act, the National Forest Management Act and the Administrative Procedures Act for non-profit clients on a fee recovery basis at market rates;

B. Based on what I have seen billed by Portland law firms representing companies or similar entities, the base rates requested are at or below market rates. Given the high-risk nature of this case, an upward enhancement would even be appropriate;

C. Given inflation and the risk factors and public interest issues involved in this case, and given the success in obtaining the relief sought, I think the rates we have requested are more than fair and reasonable; and

D. The rate requested by all the attorneys for Plaintiff is actually comparable to other attorney fee awards in the courts in Portland, Oregon, adjusted for additional experience.

24. I have litigated cases under fee shifting statutes for a number of years. I have talked with many specialists in the field. I have stayed current on the opinions of the Federal Courts in the Ninth Circuit and the District of Oregon on fee issues. I take making a declaration on this matter very seriously and I am comfortable affirming that the request made by the attorneys is consistent with their experience, training, and reputation, as are the rates sought for the legal fellow and student law clerks.

25. Based upon my review of the pleadings and other documents associated with this case, and based upon my personal knowledge of attorneys' billing practices in the Northwest, I believe the hourly rates requested are reasonable and supported by market rates in Portland, Oregon for the level of experience of each attorney. In fact, given the complexity of this particular litigation, including complex administrative law issues that often are at the heart of the

type of specialized environmental law Mr. Buchele and Mr. Buss practice, I believe the rates sought are low compared against what a private practice counsel with comparable expertise and experience would charge a private client for the same or comparable work.

26. The skills necessary to prosecute this case would not be available elsewhere at EAJA's statutory rate of $125 per hour, adjusted for increases under the Consumer Price Index for the legal services industry.

27. In addition to my experience with attorney billing rates in Portland, I also have experience with and knowledge of fee awards issued by the courts here in the District Courts of Oregon. I have litigated and obtained a fee award in the federal District Court of Oregon. <u>League Of Wilderness Defenders-Blue Mountains Biodiversity Project, Plaintiff, v. Brooks Smith</u>, et al., 491 F.Supp.2d 980 (D. Or. 2007).

28. More often, I, along with my fellow staff attorneys at the Crag Law Center have frequently been able to resolve fee disputes fairly with the responsible party in Clean Water Act cases, federal lands involving NEPA, NFMA, APA, ESA and cases involving offshore drilling. I have recently obtained fees in a case in the Northern District of California that I co-counseled for the Center for Food Safety involving the Organic Food Production Act. I can say that the rates requested in by Plaintiff for its attorneys are in line with recent settlements for similar work.

29. Finally, I understand that while counsel for Plaintiff offered to discuss settlement immediately after the case was filed, the Defendants rebuffed Plaintiff's overtures. Defendants continued to refuse to settle the case after this Court granted Plaintiff's motion for preliminary relief.

30. Defendants' approach to this litigation required counsel to spend significant time and expense pursuing this case.

## INFORMATION REVIEWED

**31.** In order to render this opinion, I have reviewed the docket, the major pleadings filed in this case related to Plaintiff's request for preliminary relief, the motion to dismiss and responses, the court's orders, and the detailed time records in support of LOWD's petition for attorney fees. I also have reviewed the declarations of Tom Buchele and Jesse Buss filed in support of LOWD's petition, as well as a pre-filing draft of LOWD's EAJA brief, which apprised me of Plaintiff's position on rates, time spent, adjustments made and the legal basis for the Petition.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Respectfully executed this 15th day of July 2017 in Portland, Oregon.

/s/ Ralph O. Bloemers
RALPH O. BLOEMERS, OSB #984172
Crag Law Center
917 SW Oak Street, Suite 417
Portland, Oregon 97205