Jesse A. Buss, OSB # 122919
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jessebuss@gmail.com

Tom Buchele, OSB # 081560
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland OR  97219-7799
Tel: 503-768-6643
Fax: 503-768-6642
Email: tbuchele@lclark.edu

Attorneys for Plaintiff League of Wilderness Defenders/Blue Mountains
Biodiversity Project

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | | |
|---|---|---|
| **LEAGUE OF WILDERNESS DEFENDERS / BLUE MOUNTAINS BIODIVERSITY PROJECT** | ) | Case No. 2:16-CV-01648-MO |
| | ) | |
| | ) | **DECLARATION OF KARL G.** |
| Plaintiff, | ) | **ANUTA IN SUPPORT OF** |
| | ) | **PLAINTIFF'S PETITION FOR** |
| v. | ) | **ATTORNEY FEES** |
| | ) | |
| **SLATER R. TURNER**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, Karl G. Anuta, declare as follows:

1.      I make this declaration in support of Plaintiff's application for attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). It is my opinion that the hours and rates sought by plaintiff's counsel are reasonable and appropriate, given the complexity of the facts and the law involved in this case.

**QUALIFICATIONS**

2.      I am an active member in good standing of the state bars of both Oregon and Washington. I am also an active member in good standing of the bars of the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the District of Oregon, and both the U.S. District Courts for the Western District of Washington and the Eastern District of Washington. My resume is attached to this declaration as Exhibit A.

3.      I have extensive experience in the field of trial litigation and public interest environmental law. I hold a Certificate in Environmental and Natural Resources Law from Lewis & Clark Law School. In 2003 I was awarded the Distinguished Environmental Law Graduate award by Lewis & Clark.  For over 30 years, I have litigated a wide variety of cases in both state and federal court, throughout the Pacific Northwest. I have been involved in litigating a number of cases against federal agencies under the Administrative Procedure Act (APA) and other similar laws. I have also pursued many lawsuits against private entities throughout the Northwest, involving matters ranging from complex pollution cleanup, to discrimination claims, to medical malpractice, to toxic exposure injuries.

**THE HOURS REQUESTED ARE REASONABLE**

4.     I have reviewed the briefs submitted in this case, as well as the PACER docket report. In addition I reviewed the written opinions of the court.  I have also reviewed the significant, but ultimately unsuccessful, efforts that Plaintiff's counsel made to settle the fee issues.  I have gone over detailed itemizations of Plaintiff's attorneys' time and activities in this case, as well as their draft supporting Declarations for the Fee Petition.

5.     In addition to the materials related to this case, I have also reviewed a number of recent opinions on fee issues from the Ninth Circuit, as well other Federal District Courts in the Pacific Northwest. This includes the opinions of the Ninth Circuit in *Moreno v. City of Sacramento,* 534 F.3d 1106 (2008), *Van Skike v. Dir., OWC*, 557 F.3d 1041 (9th Cir. 2009), and *Christensen v. Stevedoring Servs. of Am.,* 557 F.3d 1049 (9th Cir. 2009), and the opinions in various District Courts in the Pacific Northwest, including several from this court.

6.     Based on my review of the work completed in this case, as well as my own personal experience with and knowledge of the time needed to successfully litigate a case of this nature in federal court, it is my opinion that the number of hours claimed by plaintiff's counsel are quite reasonable. One of the reasons I am of that opinion is the unique and difficult nature of the legal issues presented in this case.  Cases of this sort are extremely complex, and rarely result in a complete victory for the plaintiff conservation group or individual.  Yet in this case, defendants voluntarily withdrew their challenged decision after the Court granted plaintiff's requested preliminary injunction.

That effectively gave plaintiff full and complete relief on all its claims. Finally, it appears to me that counsel have carefully exercised billing judgment and have not charged for hours that might arguably have been claimed to be duplicative or excessive.

7.     Mr. Buchele and Mr. Buss acted as co-counsel in this case. In my professional opinion, and based on my personal experience with co-counsel arrangements, that arrangement was appropriate. Co-counsel arrangements are common in plaintiff-side public interest environmental litigation. It is good practice to associate co-counsel when the circumstances warrant it. Doing so allows the casework to be split between several lawyers. When there is limited time to do research, draft briefs, etc, that can be critical to effectively presenting a case. This sort of arrangement allows solo practitioners (such as Mr. Buss and myself) to work on a case of this sort, without the need to spend all of our time on only that case - to the detriment of our other clients and/or files. Co-counsel arrangements also typically increase efficiency, because co-counsel can split up who is responsible for handling/briefing certain legal issues. This allows individual attorneys to focus on fewer issues. That typically improves the quality of (and shortens the length of) the briefing. This typically increases the quality of the advocacy, and the client representation. For practitioners like myself, Mr. Buchele, and Mr. Buss, who do not work at large law firms, co-counsel arrangements enable us to share workload and expertise similarly to how cases are often handled by multiple attorneys at large corporate law firms.

8.     In my experience, in addition to the benefits of co-counsel arrangements already described, regular conferrals (often via email and over the phone) and draft

editing between co-counsel result in both better strategic decision-making and work-product. Most lawyers do not (and should not) work in a vacuum.  There is nothing unreasonable about two lawyers billing for time spent emailing and talking about the case.  This is a necessary activity that the courts have recognized is not "duplicative" the way losing defendants often try to claim. *See e.g., Norman v. Housing Auth. Of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each."). The Ninth Circuit has also specifically upheld awards of fees to multiple attorneys representing the same parties. *See e.g. Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004). Based on my review of the case documents and plaintiff's counsels' time records, as well as my personal discussions with plaintiff's counsel, the time sought for co-counsel conferrals and mutual work-product editing was non-duplicative, and was reasonably expended in furtherance of the litigation. This is consistent with Judge Simon's attorney fees opinion in a recent environmental law case.  There Judge Simon found that time entries for co-counsel conferrals and other joint work efforts in "complex environmental litigation" were not duplicative. *League of Wilderness Defenders v. USFS*, 2014 WL 3546858, *11-15 (a case in which Mr. Buchele was also a participating co-counsel)("The court does not find the presence of two attorneys working together on this type of matter to be excessive or duplicative.").

9.      I am sure that a defense lawyer - particularly a very busy government

attorney who did not have the burden of proving their case, and overcoming the instinctive deference often given to the agency and their counsel - could have defended this case with considerably less time than that put in by Mr. Buss and Mr. Buchele. However, part of what makes a successful plaintiff side public interest attorney is putting in the long hours needed - to ensure that the briefing is correct and that all the issues that need to be addressed are covered, **and** that they are covered succinctly. It takes considerably more time to write a succinct brief, than it does to write an overly long one.[1] That sort of effort is what is needed for a lawyer to try to win a case – particularly one against the government. Given the facts and the complexity of the case, the amount of time spent by plaintiff's counsel on this case is very reasonable. When counsel for the government, or a corporate polluter, complain about the amount of time a plaintiff's counsel spends, I am immediately reminded of the Ninth Circuit's observations on this **very issue** in *Moreno v. City of Sacramento* (a civil rights case handled on the same "you **only** get paid **if** you win" basis as the case at hand).  I believe those observations cut right to the proverbial heart of the matter:

---

1 This is a **long** recognized issue.  *See e.g.,* a statement attributed to Roman orator Cicero ("*Cicero excuses himself for having written a long letter, by saying he had not time to make it shorter.")* in an 1824 publication: The Harmonicon: A Journal of Music, Number 20, Signor Rossini and Signor Carpani, p.156, Published by William Pinnock, Music Warehouse, London; A statement attributed to Martin Luther, who died in 1546 (and was reported to had said in his letters: "*If I had my time to go over again, I would make my sermons much shorter…")* The Life of Luther: Written By Himself, Collected and Arranged by M. Michelet, [Translated by William Hazlitt] p.293, 1846; And a statement made by Henry David Thoreau in a letter to a friend: "*Not that the story need be long, but it will take a long while to make it short."* Letters to Various Persons by Henry David Thoreau,  [Letter dated 11-16-1857 to Mr. B: Harrison Blake], p.165, Riverside Press, Cambridge, Houghton, Osgood, and Company, Boston, 1879.

"It must also be kept in mind that **lawyers are not likely to spend unnecessary time on contingency fee cases** in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."

*Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (2008) (emphasis added).

## THE REQUESTED RATES ARE REASONABLE

10.     In my opinion, the rates requested by both of Plaintiff's counsel are also reasonable and are within the market rates for similar work in the region. The rate requested by Mr. Buchele, who has been practicing law for 30 years, is $475/hour for both his 2016 and 2017 work. The rate sought by Mr. Buss, who has been practicing law for five years, is $250/hour for both his 2016 and 2017 work. The rates for both counsel fall **well** within what a number of large firms in Portland charge for attorneys with considerably less experience and expertise. Additionally, rates of $130/hour for student law clerk work and $140/hour for legal fellow work is very reasonable, given what most firms charge for that sort of work these days.

11.     For example, in 2010, several of Portland's large firms - firms that I know engage in extensive natural resource litigation for corporate extractive or development interests - reported in a nation-wide survey done by The National Law Journal (published Dec. 6, 2010) (hereafter referred to as the "NLJ" survey) that their top *Associate* Attorney were being billed out at a high of $450/hour (Schwabe Williamson) and $435/hour (Davis Wright Tremaine). In that same survey, Perkins Coie reported billing its "8th year" associates out at up to $436/hour. Given that the 2010 market rate

for associates here in Portland was between $450 and $436, the 2016-2017 rates requested by Mr. Buchele ($475/hr for 30 years of experience) and Mr. Buss ($250/hr for 5 years) are **well** within the market rate for this town, and are quite reasonable.

12.     By way of comparison, the Schwabe Williamson and Davis Wright firms reported in that same NLJ 2010 survey that they had senior partners who were then billing up to $540/hour, and $795/hour, respectively. That was seven years ago.  The **average** partner billing rates at those two firms was then $415 and $486 per hour, respectively. This was also comparable to partner billing rates at several other Portland law firms that also regularly represent corporate natural resource clients in federal court litigation. For example, Lane Powell and Stoel Rives both reported in that same NLJ 2010 survey that it had partners billing as high as $600/hour.  In a 2011 update of that same NLJ survey, Stoel Rives reported that its partner high billing rate had risen to $625/hour (an increase of $25/hr). I have not yet looked at any more recent NLJ billing survey results, but I believe it is quite safe to say that it is highly unlikely that the hourly billing rates at any of these Portland firms have gone **down** over the ensuing six years.

13.     The NLJ reported billing rates are also right in line with what attorneys at such firms routinely request for rates in litigation before this very court. For example, back in 2009 two Schwabe Williamson attorneys requested fees in a case that was filed in this court against the U.S. Dept. of Agriculture and U.S. Forest Service over the navigability of and the use (or ban on use) of motors on Waldo Lake. One of the Declarations filed in support of fees indicated that the "standard" billing rate **back in 2009** for an attorney with a 1982 OSB number (David Bartz, who had at that point been

practicing for 27 years) was $475 per hour.  *See*, Declaration of Carson Bowler, Docket Item #169, *Stewart v. USA,* 6:07-6282-TC, at p.2, ¶3, copy attached as Exhibit B.  Mr. Bowler, who has a 1995 bar number (then practicing for 14 years), testified that his standard billing rate **as of 2009** was $350/hour. As the NLJ survey results show, fee rates have risen considerably since 2009. In light of this evidence of the actual market rates in Portland, the rates sought by Mr. Buchele and Mr. Buss for their 2016-2017 work are **well** within (if not actually below) the current market rates for such work.

14.     The rates reported in the NLJ survey's, and by Mr. Bowler, are true market rates. Unlike the Oregon State Bar survey, these rates do not homogenize small firms and large firms. These rates also take into account the demand for and expertise and specialty of the same types of lawyers. These are factors that the courts routinely recognize as a basis for departing from the otherwise more modest rates specified in some fee shifting statutes, or those listed in the OSB 2012 rate survey (which reported 2011 rates, so it is now at least 6 years out of date).

15.     My opinion that Mr. Buchele's hourly rate is reasonable is also based on the fact that Mr. Buchele possesses highly specialized knowledge, skill, and experience in NEPA and NFMA issues. Mr. Buchele has made NEPA and NFMA litigation a particular area of focus in his career. He has successfully represented clients throughout the country in such matters. Mr. Buchele is one of the limited number of lawyers that members of the public interest environmental law bar think of when they have a "forest law" related question.

16.     My opinion that Mr. Buss' hourly rate is reasonable is also based in part

on the fact that Mr. Buss possesses specialized knowledge and skills in NEPA and forest law related issues. Mr. Buss graduated *cum laude* from Lewis & Clark Law School in 2012 and was admitted to the Oregon State Bar that same year. Like myself, Mr. Buss earned a Certificate in Environmental and Natural Resources Law from Lewis & Clark Law School, which environmental and natural resources law program is consistently ranked in the top two nationally. During law school Mr. Buss took extensive environmental and natural resources-related courses and also worked as a law clerk for an environmental law clinic where he gained specialized knowledge, skills, and experience with NEPA and other environmental laws.

17.     As a solo practitioner for the past five years Mr. Buss has had quite a bit of litigation experience in Oregon, including environmental and natural resources law cases in various Circuit Courts, the Land Use Board of Appeals (LUBA), and the Oregon Court of Appeals. His normal hourly rate for all types of work in his practice is $250/hour. The fact that Mr. Buss is only seeking his normal hourly rate in this case, instead of an increased hourly rate for this very specialized type of litigation, is yet another factor that shows his requested rate is more than reasonable.

18.     Despite their skill and reputations, Mr. Buchele and Mr. Buss frequently agree to represent plaintiffs without getting paid at all as the cases progress. This sort of contingency fee approach is typical for plaintiff side public interest lawyers. Both counsel take on cases on this basis in the hope that they can successfully conclude the litigation in their client's favor, and then – as the fee shifting statutes dictate - be awarded reasonable fees at market rates.

19.     As this court may recall from some recent appearances, I have done this same sort of work myself, on many occasions. Sometimes it is successful, but more often it is not. The government still wins more cases than it loses.  These cases are essentially done on a contingent fee basis with the only prospect of getting any fair compensation for the work done, being a full award of fees under the applicable fee shifting statutes. This is precisely what the Judge Kozinski and Ninth Circuit so artfully recognized in the opinion in *Moreno, supra.*

20.     Cases of this type are very risky. Most attorneys will not undertake them, because the chances for recovering any fees are often slim and the work is quite complex. People who seek attorneys to undertake these kinds of cases often have little money.  They have a hard time finding able and experienced attorneys such as Mr. Buchele and Mr. Buss, who are willing to invest the effort in pursuing such a case. Attorneys who represent the citizens and nonprofit groups in cases such as this perform an extremely valuable public service, and Congress recognized as much when it included a fee recovery provision in the Equal Access to Justice Act (EAJA).  Without the sort of fee shifting created by the EAJA, people or groups of limited economic means would not be able to afford to pursue legitimate challenges to wrongful government conduct by natural resource agencies.  That is true whether those people are conservationists or poor farmers/ranchers.

21.     Since I periodically litigate cases under public interest fee shifting statutes, like the EAJA, I work hard to stay familiar with the attorney hourly billing rates throughout the Pacific Northwest area.  Moreover, because I am in private practice I

also occasionally (though much less frequently than I would like) get hired to represent private or local governmental clients who pay me directly. As a result, I am acutely aware of what the market will support in the way of hourly billing rates. My own current market billing rate is $475-$495/hour. I don't often get paid those hourly rates on retainer, but then again I don't typically represent the extractive or polluting industry side of these disputes. As the NLJ Surveys I cited show (and as I know from my own personal discussions with them) my colleagues of similar age and experience in the Natural Resources bar who do represent the industry side **routinely** bill at **much** higher hourly rates for their Portland work.

22.     As I have already outlined, the market rates for similarly talented attorneys in the Portland Metro region is such that the billing rates listed by both plaintiff's counsel in this case very reasonable. What both counsel do is highly specialized work that fills an important niche in the market. The Oregon State Bar has itself recognized that where attorneys have a specific niche, they can (and as the NLJ survey and my own research among my colleagues shows regularly do) charge considerably more than the average general practitioner for their work. In a 2008 Memo, addressing the OSB Hourly Rate Survey, an OSB Market Specialist noted that:

> "Because the data for high rates varies, it is most likely due to some factor other than firm size. For example, many large law firms have attorneys that specialize in a specific niche (such as IP law or UCC/Commercial), which allows them to charge a higher rate. These niche attorneys aren't limited to large firms, however, and many charge just as much working for smaller firms. **Thus the niche, not the firm, might dictate the hourly rate.**

OSB 2008 Litigation Memo at 2 (emphasis added).

23.     Perhaps equally important, the rates requested by both Mr. Buchele and

Declaration of Karl G. Anuta in Support of Plaintiff's Petition for Attorney Fees     - 12 -

Mr. Buss are also comparable to other attorney fee awards in the courts in this area. For example, in *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001) the court indicated that the plaintiffs' "unrebutted" declarations showed that hourly rates of up to $350 per hour in the Portland area for civil rights type public interest work was reasonable. That was over 15 years ago. Rates have gone up substantially since then. *See also, Steinke v. Washington County,* 903 F. Supp. 1403, 1408 (D. Or. 1995) (rate of $215 per hour for work performed in 1994-95, over 22 years ago, found reasonable) and *Strunk v. PERB*, 343 Or 226, 169 P3d 1242, 245 (2007) (Oregon Supreme Court accepted recommendation of a Special Master, who had looked specifically at hourly rate issues, and for work done by a senior Portland attorney back in 2003 approved a rate of $400/hour). Rates in Portland have consistently gone up, not down, since 2001 and 2003. If $400/hour was a reasonable rate for work in Portland in 2003, the rates sought by Mr. Buchele and Mr. Buss are well within market for 2016-2017 work.

24.     I have litigated cases under fee shifting statutes for a number of years. Since I do that sort of work, I regularly talk with other attorneys who practice environmental or natural resources law in the region. I also periodically provide fee declarations for other counsel, and as a result I try hard to stay current on the opinions in Oregon and the Federal Courts of the Ninth Circuit on fee rate issues. I know of one recent award in a case in this District, in the Portland Division, where Judge Simon found that a public interest attorney should be awarded fees at the rate of $450/hr for work performed in 2010-2012. *See, League of Wilderness Defenders v. USFS*, 2014 WL 3546858, *11-15. The attorney involved there was Mr. Buchele. If work performed

more than five years ago was reasonable at $450/hour, the rate of $475 is certainly reasonable now, for work that Mr. Buchele did on a public interest environmental case in 2016-2017.

25.      Based on my review of the recent cases, and the expertise and quality of the work at issue in the case at hand, I am quite comfortable stating that Mr. Buchele's and Mr. Buss' requested hourly rates are consistent with (or given the NLJ survey results in some cases well below) rates that are regularly billed in this region by attorneys with comparable experience, training, and reputation.

26.      As outlined, I have practiced public interest environmental litigation in the Pacific Northwest for many years. Based on my experience and knowledge of the public interested environmental community in the region, I am confident that no equally well qualified attorneys - in eastern Oregon or otherwise - would have been willing to represent the plaintiff in this case at the EAJA rate of $125/hr.  It was not only reasonable for plaintiff to seek out Mr. Buchele and Mr. Buss as its attorneys, it was absolutely essential.  That is the way these cases get won, or at least tried with efficiency and full advocacy.

**EXPERT FEES**

27.      I spent 7.25 hours in reviewing the documentation and preparing this Declaration. My normal hourly rate is $475-$495 per hour, which is consistent with the market rate for an attorney of 30+ years skill and expertise in the same areas of practice, litigating in Portland, Oregon. The total fees, at $475/hour, for my time spent on this matter are $3,443.75

**I declare under penalty of perjury under the laws of the State of Oregon that the foregoing is true and correct to the best of my knowledge.**

DATED this 18th day of July 2017, at Portland, Oregon.

_/s/ Karl G. Anuta_____
KARL G. ANUTA

**KARL G. ANUTA**

LAW OFFICE OF KARL G. ANUTA, P.C.

735 SW FIRST AVENUE, 2ND FLOOR

| TRIAL ATTORNEY | PORTLAND, OREGON 97204 | E-MAIL |
| LICENSED IN | (503) 827-0320 | KGA@INTEGRA.NET |
| OREGON & WASHINGTON | FACSIMILE (503) 228-6551 | |

## RESUME OR CURRICULUM VITAE

**KARL G. ANUTA**
Law Office of Karl G. Anuta, P.C.
735 SW First Ave. 2nd Floor
Portland, Oregon  97204
503-827-0320

## BAR MEMBERSHIP

Oregon Supreme Court;
Washington Supreme Court
U.S. District Court, District of Oregon
U.S. District Court, Western District of Washington
U.S. District Court, Eastern District of Washington
U.S. Court of Appeals, Ninth Circuit

## EDUCATION

**Lewis & Clark College,** Portland, Oregon, 1977-81
B.S. Political Science; Externship, Washington D.C., Fall 1980; Fencing Team

**Northwestern School of Law, at Lewis & Clark**, Portland, Oregon, 1982-86
J.D. Certificate in Environmental and Natural Resources Law;
  Honor Council 1982-83, Admissions Committee 1985-86

## PROFESSIONAL POSITIONS

**Law Office of Karl G. Anuta, P.C.**, Portland, Oregon - Jan. 2008 - present
Litigation of complex environmental, personal injury, and assorted other cases.

**Sokol & Anuta, P.C.**, Portland, Oregon - Shareholder, Jan. 1998 - Dec. 31, 2007
Three attorney firm. Litigation of complex injury, environmental, and other cases.

**Sokol & Associates, P.C.**, Portland, Oregon - Senior Associate, Feb. 1994 - Dec. 1997
Litigation of civil rights, personal injury and environmental cases.

**Jolles, Sokol & Bernstein, P.C.**, Portland, Oregon - Associate, Aug. 1986 - Feb. 1994
Small firm, focusing on labor law, personal injury, and medical malpractice cases.

## HONORS & AWARDS

**Trout Unlimited - 1991** - Certificate for contribution to the protection of cold water fisheries.

**Oregon Natural Resource Council - 1992** - Conservation Achievement Award

**1000 Friends of Oregon - 1992** - Citizen Mentor Certificate

**U.S. Army Corps of Engineers, Portland District - 1994** - Environmental Advisory Board

**Northwest Environmental Defense Center - 2002** - Volunteer Attorney of the Year

**1000 Friends of Oregon - 2002** - Certificate of Appreciation, as Cooperating Attorney

**Lewis & Clark Law School - 2003** - Distinguished Environmental Law Graduate Award

**Washington State Bar - 2004** - Pro Bono Publico Service Commendation

**University of Oregon Public Interest Environmental Law Conference - 2009** - Kerry L. Ryberg Award for Environmental Activism

## SELECTED EXAMPLES OF REPRESENTATION

**Salt Caves Dam Opposition, Lead Attorney**, 1985-1998
Represented, coordinated, and advised the Sierra Club, Oregon Trout, and five other conservation organizations in multiple state and federal administrative proceedings and court cases opposing licensing of a hydroelectric project on Oregon's Upper Klamath River.  Lead counsel in all cases spawned by the project, among them: City of Klamath Falls v. EQC, 318 Or 532 (1994)(denial of CWA 401 Cert. upheld) & City of Klamath Falls v. Babbitt, 947 F.Supp. 1 (1996)(designation as Wild & Scenic River upheld).

**Oregon Environmental Council v. Kunzman**, 614 F.Supp. 657 (D.Or 1985), 636 F.Supp. 632 (D.Or 1986), 817 F.2d 484 (9th Cir.1987)
Assisted with NEPA case on proposed aerial pesticide spraying for Gypsy Moths. Prepared successful appeal to Ninth Circuit on attorneys' fees.

**Oregon Natural Resources Council v. U.S. Coast Guard**, 1987
Wrote briefs and assisted with successful NEPA TRO lawsuit to halt a proposed jet boat race through a wildlife refuge on the Snake River, during nesting season, and a subsequently successful EAJA attorneys' fees dispute.

**Northwest Environmental Defense Center (NEDC) v. Thomas**, 1986-88
Lead counsel in precedent setting CWA citizen suit against EPA, to force implementation of CWA § 303(d) (TMDLs) in Oregon.

**NEDC _et al_ v. Unified Sewerage Agency**, 1988-90
Participated in settling Clean Water Act citizen suit against municipal sewage agency. Resulted in a 1.1 million dollar settlement and cleanup agreement.

**Boger v. Norris & Stevens Inc. _et al_**, 109 Or App 90 (1991) <u>rev. den.</u> 312 Or. 588 (1992)
Three week trial of toxic water exposure injury case, resulting in jury verdict of over $750,000. Verdict upheld on appeal.

**NEDC v. U.S. Forest Service**, 1991-92
Successful FOIA litigation to obtain release of Forest Service staff recommendations on a ski area expansion plan EIS preferred alternative, which had been given to the developer but not to the public.
.
**WaterWatch v. Oregon Water Resources Department**, 1993
Successful challenge to improper issuance of a water appropriation permit or right, on Arch Cape Creek at Oregon's coast.

**Grossman v. City of Portland,** 33 F.3d 1200 (1994)
Civil rights suit against municipality, for arrest of protestor for carrying a sign in a public park during Rose Festival.  Successfully overturned trial court dismissal on police/municipal immunity grounds and obtained substantial monetary settlement.

**Buggsi Inc. v. Chevron USA Inc.**, 857 F.Supp. 1427 (1994)
Trespass, nuisance and CERCLA lawsuit for landowner with underlying gasoline contamination.  Established exception to state SOL limits, based on federal hazardous waste statutes, and obtained significant property damage settlement.

**Crawford v. Kaiser Permanente**, 1994-95
Lead counsel in multi-million dollar medical malpractice case for wrongful birth/life on behalf of parents and disabled child. Obtained settlement that preserved private, state and federal disability benefits and created additional extra-needs trust worth in excess of $1,000,000.

**National Wildlife Federation et al v. Aapaoa**, 1995
Co-counsel in successful challenge to Siskiyou Nat'l Forest allowance of suction dredge mining activities, in contravention of NW Forest Plan.

**ONRC v. Daley**, 6 F.Supp.2d 1139 (D.Or.1998)
Local counsel in the law suit that forced NMFS to list Oregon coho salmon as endangered under the Endangered Species Act.

**Parker v. Moeller's _et al_**, 1999
Toxic exposure and property damage claim for multiply chemically sensitive neighbor of tree nursery.  Obtained settlement of over $200,000.

**Friends Of Mt. Hood _et al_ v. USFS & Mt. Hood Meadows Ski Area,** 1997-2001
Lead counsel in multiple federal court challenges to Ski Area expansion plan, as well as a Clean Water Act suit against ski area and USFS.  Obtained precedent setting CWA Consent

Decree, and a court issued injunction against further expansion until additional NEPA studies were done.

**Friends Of East Fork v. N.M.F.S.**, 2000
Successful FOIA suit against federal agency to force disclosure of EIS & HCP documents actually written by gravel mine consultants, and intended as a template for agency draft HCP/DEIS.

**Friends Of East Fork v. JL Storedahl**, 1999 - 2004
Represented, coordinated, and advised local conservation groups in multiple state and federal administrative and federal court proceedings, opposing the proposed expansion of a gravel mine on the banks of the East Fork of the Lewis River, in Southwest WA.

**Multiple Herbicide Drift Cases,** 2006-2011
Represented various individuals in damages cases (large and small) arising out of misapplication or use of pesticides, that caused harm to persons or property.

**Citizens For Responsible Development v. D.E.Q. & D.S.L.,** 2009 - 2015
Represented and advised local business and citizen group opposing siting of WalMart Super Center on top of vernal pool wetlands and next to a designated critical salmon habitat stream, in The Dalles, OR. Successfully obtained revocation of a Clean Water Act Stormwater Construction Discharge permit issued by state DEQ.

**Benjamin v. Douglas Ridge Rifle Club,** 2010
Represented plaintiff in precedent setting Clean Water Act & Res. Conserv. Recovery Act law suit against 60 year old Gun Club. Obtained Federal Court Consent Decree specifying requirements for wetland fill removal and lead contamination clean up of shooting range.

**NEDC et al v. Grabhorn, Inc.,** 2008 - 2013
Represented conservation groups to limit discharges from leaking landfill, to nearby river. Obtained precedent setting Summary Judgment rulings on application of the Clean Water Act to polluted ground water, and ultimate a favorable Federal Consent Decree under both Clean Water Act and Resource Conservation and Recovery Act.

**Columbia Riverkeeper v. Port of St. Helens,** 2012
Successful Oregon Public Records Act case to obtain Coal Terminal Leasing agreements entered into by a local Port.

## TEACHING/PUBLISHING ACTIVITIES

.
**Oregon State Bar, CLE, Speaker,** Recent Development in Environmental Law -"TMDLs and You" - Bend, Or. November 1989

**University of Oregon, Land, Air and Water Conference, Speaker** - "Litigating Free Flowing River" - Eugene, Or. March 1990

**Water Quality, Water Quantity: The Reluctant Marriage, Conference Planner/Organizer** - Portland, Or. February 1991

**Northwest Rivers Council, Hydro Licensing/Re-licensing Workshop, Speaker** - "How To Stop A Dam" -  Seattle, Wash. May 1991

**Storm Water Discharge Seminar, Speaker** - "Liability For Damages From Storm water Runoff" - Portland, Or. April 1992

**U.S. Forest Service, Ski Area Coordinator Conference, Speaker** - "Is There Room on the Mountain" - Crystal, Wash. January 1993

**Northwestern School of Law at Lewis & Clark, Portland, Or., Environmental Litigation Course** - Assisted Adjunct Professor with class on the practical skills needed in to litigate environmental cases - Spring Terms 1993-1999

**Oregon State Bar, Environmental & Natural Resources Section Annual Meeting, Speaker** - "Instream Water Rights" - Kahnetta, Or. September 1993

**University of Oregon Law School, Land, Air and Water Conference, Speaker** - "Clean Water Act Citizen Suits" - Eugene, Or. March 1994

**Assoc. of Public Works Administrators, 1995 Int'l Public Works Congress and Exposition**, **Speaker** - "Lawsuits as Best Management Practices" -  Dallas Tex.

**Premises Liability: Preparation and Trial of a Difficult Case in OR, Speaker and Co-Author** - Portland, Or. August 1997

**Oregon Trial Lawyers Association, Trial Lawyer Magazine, Author** - "10 Premises Liability Tips" - Spring 1999

**Oregon State Bar, Environmental & Nat.  Res. Law CLE/BarBook, Author** - Chapter 18 - "Toxic Torts" - 2002, update published 2006

**University of Oregon Law School, Land, Air and Water Conference, Speaker** - "Starting An Environmental Law Public Interest Law Practice" - Eugene, Or. March 2011

**Oregon State Bar, Administrative Law CLE/BarBook, Author** - Chapter 6 - "Extraordinary Remedies in Administrative Cases" - 2011, update and re-publishing August 2016

## COMMUNITY ACTIVITIES

**Northwest Environmental Defense Center,**  Board of Directors, 1986-present
  (Vice-President, 1995-1999; President, 1989-1995, and 2000 - present)
Organize and supervise attorneys and students involved in nonprofit environmental litigation group. Represent group in numerous administrative, political, and judicial proceedings involving water and related development issues in the Pacific Northwest.

**Pacific Rivers Council (formerly Oregon Rivers Council)**, Board of Directors, 1989-1997
Nonprofit group focused on protecting and properly managing the waters and cold water fishery resources of the Pacific Northwest

**Waterwatch of Oregon,** Board of Directors, 1989-present
Nonprofit organization dedicated to the management of Oregon's water resources to support both a healthy economy and environment.

**Friends Of Mount Hood,** Board of Directors, 1989-present
Helped found tax exempt conservation coalition organized to"watchdog" development on Mount Hood, Oregon. Coordinate and represent coalition on ski area expansion issues.

## OTHER EXPERIENCES

**Security Guard (armed)** - Wallace Security, Portland, Oregon 1981-82

**Political Theory Thesis** - Lewis & Clark College, 1981 - The Nature of Man: Good or Evil: Comparing Hobbes, Rousseau, Plato & Machiavelli

## INTERESTS AND HOBBIES

Cooking, Canoeing, Sea Kayaking, Fly Fishing, Skiing & Old House Repair.

*References, Writing Samples & Further Digressions available upon request*

**David Bartz, Jr., OSB #824820**
Email dbartz@schwabe.com
**Carson Bowler, OSB #951830**
Email cbowler@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981
Fax 503.796.2900
      Of Attorneys for Intervenor Columbia Seaplane Pilots
      Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN K. STEWART,** | No.  07-6282-TC |
| Plaintiff, | |
| vs. | **DECLARATION OF CARSON BOWLER IN SUPPORT OF CSPA'S MOTION FOR FEES AND COSTS PURSUANT TO THE EAJA** |
| **UNITED STATES OF AMERICA, acting by and through its DEPARTMENT OF AGRICULTURE, by and through the UNITED STATES FOREST SERVICE,** | |
| Defendant, | |
| vs. | |
| **COLUMBIA SEAPLANE PILOTS ASSOCIATION, INC.,** | |
| Intervenor-Defendant. | |

Page 1 -   **DECLARATION OF CARSON BOWLER IN SUPPORT OF CSPA'S MOTION FOR FEES AND COSTS**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
503.222.9981

PDX/117892/156692/CDB/5256011.1

Page - 1 - Exhibit B - Declaration of Karl G. Anuta

I, Carson Bowler, do hereby attest that:

1.      I am over 18 years of age, and have personal knowledge of the matters declared herein.

2.      David F. Bartz, Jr. and I were lead counsel for intervenor Columbia Seaplane Pilots Association, Inc. on the above captioned case.

3.      Our standard computer hourly rates are $475 (Bartz) and $350 (Bowler). Because Columbia Seaplane Pilots Association, Inc. is a nonprofit organization, we agreed to represent them in this litigation at a reduced rate ($332 for Mr. Bartz), ($240 for Mr. Bowler).

4.      David F. Bartz, Jr. and I were lead counsel for John Grover, an intervenor in the most recent court case in Oregon regarding navigability (to the best of my information and belief). The case involved a 181 mile stretch of the John Day River. It was tried to verdict in Marion County, and Mr. Bartz was co-lead counsel for the defending parties. As part of that representation, Mr. Bartz and I gained significant experience and knowledge regarding the law surrounding federal navigability. Whether Waldo Lake is a navigable waterway was a primary issue in the Waldo Lake case, and the experience and knowledge gained from the John Day River case was very important and applied to our representation of CSPA in this matter.

5.      The Waldo Lake case lasted for nearly two years. It was resolved through significant motion practice, including two motions to dismiss by the United States and cross motions for summary judgment by all parties. Throughout the litigation, Columbia Seaplane Pilots Association, Inc.'s attorneys coordinated efforts with lead petitioner Stewart in prosecuting the case.

6.      Attached as Exhibit 1 are the time entries from the timekeepers at Schwabe Williamson & Wyatt entered contemporaneously with the effort done on the case. The time spent by the Schwabe lawyers was necessary to represent effectively Columbia Seaplane

Page 2 -    **DECLARATION OF CARSON BOWLER IN SUPPORT OF CSPA'S MOTION FOR FEES AND COSTS**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
503.222.9981

PDX/117892/156692/CDB/5256011.1

Page - 2 - Exhibit B - Declaration of Karl G. Anuta

Pilot Association, Inc. in this litigation.

7.    There were at least two motions filed by intervenor McKenzie Flyfishers that were not joined by the United States.  Time entries effort responding to these motions have not been included in Exhibit 1 or in Columbia Seaplane Pilot Association, Inc.'s fee request.

8.    I hereby declare that the above statements are true to the best of my knowledge and belief and I understand that it is made for use as evidence in court and is subject to penalties of perjury.

DATED this 2nd day of November, 2009.

_____
Carson Bowler

Page 3 -   **DECLARATION OF CARSON BOWLER IN SUPPORT OF CSPA'S MOTION FOR FEES AND COSTS**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
503.222.9981

PDX/117892/156692/CDB/5256011.1

Page - 3 - Exhibit B - Declaration of Karl G. Anuta