IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**LEAGUE OF WILDERNESS
DEFENDERS/BLUE MOUNTAINS
BIODIVERSITY PROJECT**,

       Plaintiff,

v.

**SLATER R. TURNER**, et al.,

       Defendants.

No. 2:16-CV-01648-MO

**OPINION AND ORDER**

**Mosman, J.**

    This matter comes before me on Plaintiffs League of Wilderness Defenders's Application for Fees Pursuant to EAJA [43] and Amended Bill of Costs [52]. For the reasons stated below, I GRANT in part and DENY in part the Motions.

## BACKGROUND

    In December 2015, Defendant United States Forest Service issued a decision memo that approved the Walton Lake Restoration Project, a proposed commercial logging and thinning project at Walton Lake. Plaintiff League of Wilderness Defenders/Blue Mountains Biodiversity Project (LOWD) challenged the Forest Service's approval of the project under the National Environmental Protection Act and the National Forest Management Act. Complaint [1]. LOWD

moved for a preliminary injunction to enjoin the logging, which I granted after oral argument. Order [25].

The Forest Service then voluntarily withdrew its decision memo, and I stayed the litigation so that the parties could negotiate attorney fees. Order [30]. Those negotiations were unsuccessful, and LOWD moved to voluntarily dismiss. Motion [34]. I granted the motion and dismissed LOWD's claims without prejudice. Order [39].

LOWD moved for attorney fees [43] and costs [52]. The Forest Service requested discovery on the motion [54], and I denied the request after briefing. Order [66].

LOWD seeks a grand total of $213,373.32. Reply [82] at 29. That amount is comprised of: $198,988.00 in attorney, legal fellow, and law student time, of which $59,812.50 was incurred in the attorney fee litigation itself; $13,819.25 in expert fees; and $566.07 in costs. *Id.* LOWD retained attorneys Tom Buchele and Jesse Buss, as well as legal fellows and law students at Earthrise Law Center, the environmental law clinic at Lewis & Clark Law School and several experts. *See* Buchele Decl. [83].

## DISCUSSION

### I.  Entitlement to Attorney Fees

A party who prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney fees and costs under the Equal Access to Justice Act. 28 U.S.C. § 2412. To be entitled to an award, a party must (1) prevail, (2) be eligible for an award, (3) submit a statement of amounts sought as well as an itemized account of time expended and rates charged, and (4) allege that the United States's position was not substantially justified.

*Scarborough v. Principi*, 541 U.S. 401, 408 (2004). The Forest Service does not contest that LOWD meets these requirements.

As to (1), a party prevails if it "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). LOWD prevailed because it won a preliminary injunction and, because the Forest Service withdrew its approval, it achieved the benefit it sought.

As to (2), a party is eligible for an award if it has fewer than 500 employees, is tax exempt under 501(c)(3) of the Internal Revenue Code, and has a net worth of less than $7,000,000. 28 U.S.C. § 2412(d)(2)(B). LOWD is such a party. Coulter Decl. [46] at 2.

To satisfy (3), LOWD submitted a statement of the amounts it sought with the itemized account of time expended and rates charged. As to (4), LOWD alleges that the Forest Service's position was not substantially justified.

LOWD has therefore met all four requirements, and I find that LOWD is entitled to attorney fees.

## II.    Amount of Fees

If a plaintiff is entitled to an award, a court determines reasonable attorney fees by the lodestar calculation. *Hensley*, 461 U.S. at 433; *see Comm'r, INS v. Jean*, 496 U.S. 154, 160–61 (1990) (holding that the *Hensley* analysis applies to EAJA awards). The lodestar calculation multiples the reasonable hourly rate by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433.

### A.  *Rates*

LOWD seeks attorney fees at these rates: Mr. Buchele at $475/hour; Mr. Buss at $250/hour; the legal fellows at $140/hour, and the law students at $130/hour.

The EAJA sets a statutory maximum hourly rate of $125/hour, which the court may adjust for cost of living increases. 28 U.S.C. § 2412(d)(2)(A). For 2016, the adjusted statutory rate is $192.68; for 2017, $196.79. *See Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (citing 28 U.S.C. § 2412(d)(2)(A); *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005); and 9th Cir. R. 39-1.6).

Nevertheless, a "special factor" may justify a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). In the Ninth Circuit, a court may award a higher rate if (1) the attorney possesses "distinctive knowledge and skills developed through a practice specialty," and those skills are (2) needed in the litigation and (3) not available elsewhere at the statutory rate. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1997). It is the plaintiff's burden to satisfy these elements. *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158–62 (9th Cir. 2008).

Where higher rates are justified, a court looks to prevailing market rate to set reasonable hourly rates. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.* Courts in this District rely on the most recent Oregon State Bar (OSB) Economic Survey as the "initial benchmark." *See* U.S. Dist. Ct., Dist. of Or., Message from the Court Regarding Fee Petitions, https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions. Courts may

also consider factors such as the quality of attorney's performance, the results obtained, the complexity of a case, and the special skill and experience of counsel. *League of Wilderness Defenders v. U.S. Forest Serv.*, No. 3:10-cv-01397-SI, 2014 WL 3546858, at *6 (D. Or. July 15, 2014*) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010)) [hereinafter *LOWD*].

The OSB Economic Survey does not include data on law student rates. In the absence of relevant evidence, the court may determine a reasonable rate based on its knowledge of the legal community. *Asia Pac. Agric. & Forestry Co. v. Sester Farms, Inc.*, No. 3:12-CV-936-PK, 2012 WL 6157263, at *8 (D. Or. Nov. 22, 2013). Rates for paralegals are an appropriate comparator; courts have awarded between $125 and $50 for paralegal work. *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) ($100 for paralegals, $75 for law student interns); *Prison Legal News v. Umatilla Cty.*, No 2:12-cv-01101-SU, 2013 WL 2156471, at *7 (D. Or. May 16, 2013) ($90–125 for paralegals); *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1247–49 (D. Or. 2013) (citing cases that awarded $50 for paralegals who provided no evidence of their experience and up to $125 for those who did).

## 1. Whether issue preclusion applies

LOWD argues that prior litigation determines the reasonable rates in this case.

Issue preclusion applies where an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. *Arizona v. California*, 530 U.S. 392, 414 (2000). The issues must be identical. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).

In a similar case in 2014, District of Oregon Judge Michael Simon held that rates of $450 for Mr. Buchele and $125 for law students were reasonable. *See LOWD*, 2014 WL 3546858, at *13–15. LOWD argues that issue preclusion applies to that holding, and that therefore the Forest Service cannot now argue for rates lower than the rates awarded in the 2014 case.

I disagree. The issue of reasonable rates is too case-specific to have been "actually litigated and determined," even in a very similar case. For example, to determine whether an attorney qualifies for a higher rate, I must consider whether his skills were "needed in the litigation," *Love*, 924 F.2d at 1492—not some other litigation; this litigation. Likewise, the reasonableness factors that I may consider, such as the quality of the attorney's performance and the results obtained, necessarily differ from case to case. *See Perdue*, 559 U.S. at 551–52. Still, *LOWD*'s similarity does make it especially persuasive here.

### 2.   Whether Mr. Buss and Mr. Buchele qualify for a higher rate

LOWD argues that Mr. Buss and Mr. Buchele meet the three requirements that justify rates higher than the statutory maximum. *See Love*, 924 F.2d at 1496.

### a)   Distinctive knowledge and skills

First, LOWD argues that Mr. Buss and Mr. Buchele have "distinctive knowledge and skills" developed through their experience in environmental law. The Forest Service does not dispute that Mr. Buchele has distinctive knowledge and skills, but argues that Mr. Buss does not.

Mr. Buss is an Oregon attorney who has practiced since 2012, primarily in various areas of state law. Buss Decl. [45] at 2–4. At Lewis & Clark Law School, he took many environmental law classes; earned a Certificate in Environmental and Natural Resources Law from its highly-ranked environmental law program; worked at Earthrise (then known by a different name); and

interned the Northwest Environmental Defense Center. *Id.* His current practice includes "several" environmental law cases. *Id.*

The Forest Service argues that Mr. Buss's law school experience alone cannot meet the requirement for distinctive knowledge and skills. In line with a recent opinion from the Western District of Washington, the Forest Service argues that "distinctive knowledge and skills developed through a practice specialty" must be developed post-bar admission. [1] *See Wilderness Watch v. Iwamoto*, No. C10-1797-JCC (W.D. Wash. Feb. 8, 2013).

The parties dispute whether two cases in this district support the Forest Service's contention. In *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1094–95 (D. Or. 2016), the court reduced the requested rate for an attorney who had "gained a significant amount of clinical and legal research experience and began to develop a specialized knowledge base in environmental law while in law school," but who had practiced for less than a year. "Because [the attorney] had less than one year of professional experience," the court reasoned, "this court cannot conclude that [he] developed a specialized skillset and reputation in such a short time to justify" a higher rate. *Id.* at 1094. Previously, in *Cascadia Wildlands v. Bureau of Land Management*, 987 F. Supp. 2d 1085, 1097–98 (D. Or. 2013), the court had reached the same conclusion on similar facts.

As LOWD points out, both judges increased the rate they would have otherwise awarded due to the specialized environmental training those attorneys received during law school. *See McKenzie*, 158 F. Supp. 3d at 1094; *Cascadia*, 987 F. Supp. 2d at 1098. Still, as the Forest

---

[1] In addition to its argument that the distinctive knowledge and skills must be acquired *after* bar admission, the Forest Service also seems to suggest, as other Circuits have held, that the distinctive knowledge and skills must be acquired *before* law school. *See Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 950–51 (D.C. Cir. 2005). These positions clearly conflict, and the latter is inconsistent with Ninth Circuit precedent. *See Love*, 924 F.2d at 1496 (holding that attorney's "prior insecticide litigation experience, coupled with his experience in obtaining federal preliminary injunctions" met distinctive knowledge requirement).

Service argues, neither court found that that law school training could justify an award above the statutory maximum.

I agree. This case differs slightly because Mr. Buss does have some post-law school experience in several environmental law cases. Still, rates above the cap are supposed to be "rare" and "exceptional," *Perdue*, 559 U.S. at 552–54. An attorney with Mr. Buchele's 30 years of experience in this field is rare and exceptional; an attorney with Mr. Buss's environmental law background, much less so. Therefore, I find that Mr. Buchele meets the first element, but that Mr. Buss does not.

### b) Needed in the litigation

Second, LOWD argues that the specialized knowledge was necessary because the case involved the application of various complicated federal environmental law issues. Application [43] at 8. LOWD's experts agree. *See* Jerger Decl. [48] at 6; Bloemers Decl. [49] at 11. The Ninth Circuit has held that environmental law cases can require distinctive skills and knowledge. *See, e.g.*, *Love*, 924 F.2d at 1496. This case involved relatively undeveloped areas of law, i.e., the applications of exceptions to the Eastside Screens and a categorical exclusion. *See generally* Resp. in Opp. To Mot. For Prelim. Inj. [17].  LOWD points out that Mr. Buchele's knowledge was especially necessary in this litigation since LOWD had only a few days between when it received the administrative record and when it filed its motion for preliminary injunction. *See* Mot. for Prelim. Inj. [9] at 2 n.1.

The Forest Service responds that the case "involved the straightforward application of administrative law and two common environmental statutes," requiring no special skill. Resp. [69] at 6; *see Thangaraja*, 428 F.3d at 876 (rejecting enhanced fees where attorney's specialized

knowledge was not necessary in routine immigration case). Its expert agrees that the case's complexity was too low to justify the high hourly rates. Fite Decl. [71] at 4. The Forest Service also contends that because Mr. Buss and Mr. Buchele worked on litigation tasks together, they were interchangeable, and because they were interchangeable, there is no evidence to show that any one attorney's skills were "necessary." Resp. [69] at 6–7.

For the reasons *LOWD* identifies, I find that Mr. Buchele's specialized knowledge was necessary to this case. The arguments in this case strayed into the weeds of the Forest Service's Decision Memo, the interpretation of exceptions to the Eastside Screens, the meaning of terms used in the scoping notice, and the applicability of the sanitation harvest categorical exception. *See generally* Resp. in Opp. to Mot. For Prelim. Inj. [17]. Mr. Buchele's specialized knowledge was especially important since this case moved quickly. Finally, I hold that senior and junior attorney may work together on a case and yet not be interchangeable.

### c) Not available elsewhere at the statutory rate

Third, LOWD argues that Mr. Buchele's expertise was unavailable at the EAJA rate, even as adjusted for inflation. LOWD's Director, Karen Coulter, detailed her efforts to find qualified attorneys for this and other cases. She says she has "never been able to retain a lawyer to represent LOWD who did not expect to recover for her time at market rates," and that "in 2016 LOWD had multiple cases that LOWD could not bring because I could not locate available, qualified counsel," despite her "constant" efforts. Coulter Supp. Decl. [77] at 5. LOWD's experts verified that Mr. Buss and Mr. Buchele's expertise were not available at the EAJA rate. Becker Decl. [47] at 21–22; Bloemers Decl. [49] at 13.

The Forest Service responds that (a) Ms. Coulter failed to provide enough detail about her attempts to research attorneys; (b) Ms. Coulter only searched for attorneys at $125/hour, rather than the cost-of-living-adjusted rates; (c) since Mr. Buss worked on the case without Mr. Buchele for three months, there is no evidence that LOWD needed a lawyer of Mr. Buchele's caliber and rate; and (d) environmental litigation is no longer a niche area, since it is widely taught and practiced. The Forest Service's expert confirmed that there are many recent law graduates with similar training who would litigate the case at the statutory rate.

In its reply, LOWD points to several of its experts' declarations, which explain that qualified counsel were not available at the statutory rate, anywhere in Oregon. *See, e.g.*, Becker Decl. [47] at 31, 43. It also emphasizes that Judge Simon found that environmental attorneys were not available elsewhere at the statutory rate. *See LOWD*, 2014 WL 3546858, at *13–15.

I find that LOWD met its burden to demonstrate that attorneys with Mr. Buchele's experience and training were not available elsewhere at the statutory rate. Plaintiff's expert David Becker, an attorney who has practiced for 18 years (10 years in Portland) noted that "there are no attorneys with the requisite skills and expertise in environmental law available in Portland, or elsewhere in Oregon, at the statutory EAJA rate." Becker Decl. [47] at 21; *see also* Bloemers Decl. [49] at 13 (asserting that the necessary skills are not available at adjusted statutory rate). Even if Ms. Coulter did not look for attorneys at the adjusted statutory rate, LOWD's experts insist that she would not have found them. Furthermore, as discussed above, I do not think that Mr. Buss and Mr. Buchele are interchangeable; that Mr. Buss worked for some time on the case without Mr. Buchele does not mean that LOWD did not benefit from Mr. Buchele's representation once he became available. Lastly, the fact that environmental law is now taught more widely does not mean that there are significantly more attorneys who practice

environmental law, and much less that there are attorneys with Mr. Buchele's thirty years of experience who are available at the statutory rate.

In sum, I find that Mr. Buchele qualifies for a higher rate.

### 3. Mr. Buss's rate

Because Mr. Buss does not meet the first element, a rate above the statutory maximum is not justified. Thus, the maximum I may award to Mr. Buss is $192.68 for work performed in 2016, and $196.79 for work performed in 2017. The Forest Service does not argue that I should award Mr. Buss less than the statutory rate, and I find the rate appropriate.

### 4. Mr. Buchele's rate

LOWD requests $475/hour for Mr. Buchele. "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Prison Legal News*, 2013 WL 2156471 at *4.

The Forest Service contests Mr. Buchele's requested rate of $475/hour. First, the Forest Service argues (without legal support) that the relevant Oregon community is Eastern Oregon, because the case was brought in the Pendleton Division. There, attorneys with 30 years of experience charge $275/hour at the 75th percentile. The Forest Service also asserts that LOWD cannot argue that Portland is the correct forum because it did not raise the forum issue in its motion.

LOWD responds that its experts' declarations do in fact discuss the appropriate forum. Those experts assert that Portland is the proper forum and explain that there is limited information available about attorneys in Eastern Oregon. Jerger Decl. [48] at 8; Becker Decl.

[47] at 16–17; Coulter Decl. [46] at 2–3. They each conclude that no similarly-qualified attorneys were available in Eastern Oregon.

I agree that Portland is the correct forum, because the case was argued in Portland and because attorneys were not available in Eastern Oregon. *See also Prison Legal News*, 2013 WL 2156471, at *5 (awarding Portland market rates in case filed in Pendleton).

The Forest Service further contends that $475/hour is excessive for Mr. Buchele because, as the director of a law school clinic, he does not incur the same overhead as attorneys at firms and non-profits.

In response, LOWD points out that both the U.S. Supreme Court and the Ninth Circuit have declined to award lower fees to attorneys who work for non-profit legal services, and lower courts have rejected the argument that legal clinics are any different. *See LOWD*, 2014 WL 3546858, at *15; *Proulx v. Citibank, N.A.*, 709 F. Supp. 396, 398 (S.D.N.Y. 1989).

LOWD again points out that in *LOWD*, Judge Simon found $450/hour an appropriate rate for Mr. Buchele. *See LOWD*, 2014 WL 3546858, at *15. Citing the 2012 OSB Survey, LOWD highlights that lawyers practicing 21–30 years charged $399/hour in the 75th percentile and $470/hour in the 95th percentile.

First, I find that Portland is the appropriate forum to judge market rates, because LOWD presented sufficient evidence of the lack of available, qualified attorneys in Eastern Oregon. And I agree that LOWD did not waive that argument. Second, Mr. Buchele's rate should not be reduced because he works for the law school clinic. *Hensley* mandates a market-rate approach to attorney fees. *See Gonzalez*, 729 F.3d at 1205. Courts do not delve into the specifics of the attorney's overhead and costs. Regardless of how the overhead is initially funded, the market-rate approach assumes that attorneys generally incur the same overhead costs. Lewis & Clark

may front those costs for Mr. Buchele and the students, but Lewis & Clark's funding does not change the fact that Mr. Buchele and the students incurred that overhead in their defense of LOWD. Lastly, I find a rate of $475/hour reasonable. The 2017 OSB Survey indicates that Portland-area attorneys who have practiced from 21–30 years charge $475/hour at the 75th percentile. Moreover, Mr. Buchele's thirty years of experience puts him at the upper end of the 21–30 age range, and he has significant specialized experience relevant to this litigation.

### 5. Legal fellows' and law students' rates

LOWD requests $140/hour for the legal fellows, Doug DeRoy and Kathryn Roberts, and $130/hour for its law students, Tessa Chillemi, Kadin Pasley, and Skylar Sumner.

The Forest Service argues that $50/hour is a reasonable rate. It contends that LOWD was required to submit evidence that paying clients paid the requested rate, since "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis omitted). LOWD did not submit such evidence. Moreover, the Forest Service argues that the court must award lower rates because LOWD failed to submit information about the qualifications of the students and fellows.

In response, LOWD points out that each of its experts assert that the rates are reasonable. *See* Jerger Decl. [48] at 7; Blomers Decl. [49] at 12; Becker Decl. [47] at 24–25. LOWD also emphasizes that Judge Simon awarded $125 for work performed by a law student in 2011–2014. *LOWD*, 2014 WL 3546858, at *15–16. In its reply, LOWD attaches the law student and legal fellow resumes, though it asserts that it was not required to submit such detailed information on their qualifications. Buchele Supp. Decl. [83].

13

I find that LOWD, through its expert declarations, has met its burden to demonstrate that its requested fees for the students and fellows are reasonable. I do not read the *Hensley* quote to require proof that clients have paid the requested hours or rates; instead, it requires that a hypothetical paying client would be billed for those hours (or rates). Law clerk time is compensable. *See e.g., Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (holding that law clerk and paralegal time is compensable under federal fee-shifting statutes); *Nadarajah*, 569 F.3d at 918 (awarding fees for time spent by law student interns). And LOWD submitted sufficient information on the qualifications of its students and fellows. *See* Buchele Decl. [44] at 5–7.

### B.  Hours

The lodestar method multiplies the reasonable rate by the reasonable hours spent. Courts are instructed to exclude hours that are excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). It is LOWD's burden to document the appropriate hours expended and to submit evidence in support of those hours worked. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir.1992). The government has the burden to submit evidence to challenge the accuracy and reasonableness of those hours. *Id.*

By my calculations, LOWD submitted time records for 573.9 hours on primary litigation (not including its experts' hours), and 194.2 hours on the attorney fees litigation. Adjusted for the hours LOWD withdrew in its reply, LOWD requests fees for a total of 761.9 attorney, legal fellow, and law student hours.

The Forest Service challenges 160 of LOWD's submitted hours. It objects to 35.8 hours as noncompensable; 41.4 hours as excessive, redundant, and unnecessary; and 87.6 hours as

instruction. It further urges the court to reduce LOWD's hours by 15% to account for the time

LOWD spent on its unsuccessful claim and for the excessive time spent on the Complaint.

### 1. Administrative objections

The Forest Service objects to 21.4 hours as administrative or clerical. "Tasks which are

clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by

counsel." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1251. "Tasks considered clerical include,

but are not limited to, filing motions with the court, filling out and printing documents, preparing

affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling

depositions, and sending documents." *Muller v. Country Mut. Ins. Co.*, No 3:14-cv-01345, 2017

WL 6209701, at *6 (D. Or. Dec. 9, 2017) (quoting *Sterling Sav. Bank v. Sequoia Crossing*, LLC,

No. 03:09–cv–00555–AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010)).

LOWD responds that the administrative objections actually include hours that LOWD

spent finding citations to the administrative record. Citations are not clerical. *Royal All. Assocs.*

*Inc. v. Mora*, No. 15-cv-3707, 2016 WL 3346521, at *3 (N.D. Cal. June 16, 2016).

I hold that LOWD may recover for citechecking. But the Forest Service also objects to

hours spent creating and reviewing tables of contents and authorities, and formatting and filing

briefs. Those activities are clerical. Accordingly, I decline to award fees for the following

administrative entries:

| Date | Name | Task | Hours |
|------|------|------|-------|
| 9/13/2016 | Buchele | Review tables drafted by students | 0.8 |
| 9/13/2016 | Chillemi | table of authorities etc and last minute edits | 1 |
| 9/13/2016 | Chillemi | Table of Acronyms | 0.2 |
| 9/13/2016 | DeRoy | Tables of authorities with TC | 1 |
| 9/23/2016 | Chillemi | cite checking and formatting motion | 0.5 |
| 10/4/2016 | Buchele | Review tables created by students | 0.6 |

| 10/4/2016 | DeRoy | formatted final brief | 0.7 |
|---|---|---|---|
| 10/4/2016 | DeRoy | Table of contents and authorities for reply | 0.7 |
| 6/30/2017 | Buss | Finalize Bill of Costs and supporting declaration with exhibits, file in EFC. Phone call to court clerk RE proper filing codes. | 0.4 |
| 6/30/2017 | Sumner | Finalized bill of costs exhibits for filing | 0.5 |

### 2.  Objections to hours spent on motions not filed

The Forest Service objects to 14.4 hours spent on motions never filed. Specifically, it objects to hours that Mr. Buss, Mr. Buchele, and a law student spent drafting motions to complete the Administrative Record; investigating possible animal-based claims; preparing a Freedom of Information Act request; and reviewing the FOIA responses.

LOWD responds in part that it would have filed the motions had the litigation continued. Anyway, it says, investigation and research prior to filing the complaint is compensable. *Oregon Nat. Res. Council Fund v. Goodman*, No. CIV. 05-3004-PA, 2008 WL 4000442, at *4 (D. Or. Aug. 25, 2008) ("[R]eviewing the administrative record, researching the applicable law, identifying which claims were appropriate to assert, and drafting the Complaint . . . rank among the most important [tasks] an attorney performs in any litigation.").

I find that LOWD may recover for the hours it reasonably spent to investigate potential claims and prepare for future motions.

### 3.  Conference objections

The Forest Service objects to 29.6 hours labelled as "conference." It argues that only one participant in a conference should bill the conference: "Generally, when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252.

LOWD responds that the Ninth Circuit has rejected the assertion that participation of more than one attorney is necessarily duplicative. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014); *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). The Forest Service failed, LOWD says, to explain why the conferences were impermissibly duplicative. In *LOWD*, Judge Simon found the use of multiple attorneys reasonable. *See LOWD*, 2014 WL 3546858 at *10 (not excessive or duplicative for attorneys to work together on complex environmental litigation).

I agree that it is generally reasonable for two attorneys to work together and to double-bill for some of that work. Time spent in the same conference is not necessarily duplicative, and the Forest Service failed to explain why Mr. Buchele and Mr. Buss's joint tasks were duplicative. Indeed, its expert expressly did not opine on the reasonableness of the submitted hours. *See* Fite Decl. [71] at 4. Still, I find that work does become duplicative when more than two individuals are involved. Thus, I have declined to award fees for the following entries:

| Date | Name | Task | Hours |
|------|------|------|-------|
| 8/5/2016 | Chillemi | meeting with Jesse and Tom | 1.4 |
| 8/30/2016 | Chillemi | Sitting in on phone meeting with Marilyn | 0.3 |
| 9/28/2016 | Chillemi | meeting with Tom, Doug, Jesse to discuss opposing counsel's brief | 0.6 |
| 9/28/2016 | DeRoy | MTG w/ TC, TB, JB re: defendant's response | 0.6 |
| 10/5/2016 | Chillemi | meeting with Tom, Doug, Jesse to prep for oral argument | 1.5 |

### 4. Trip to Walton Lake objections

The Forest Service objects to the 6.7 hours Mr. Buss billed for his visit to Walton Lake. The Forest Service argues that the site visit was unnecessary for the administrative-law-based challenge to the Decision Memo.

LOWD responds that the site visit helped the attorneys understand generally the landscape of the site, and specifically the alternatives available to the Forest Service. As evidence of the importance of the site visit, LOWD points out that Mr. Buchele also visited the site (though he did not bill for his visit).

As explained above, I find time spent on claim investigation and evaluation reasonable. I award fees for the site-visit hours.

### 5.  Duplicative objections

The Forest Service objects to several entries as duplicative. Upon my review, I find that those entries are not duplicative. It is not unreasonable for multiple attorneys to do some tasks, such as reviewing and editing the Complaint. *See LOWD*, 2014 WL 3546858 at *10. It is also not duplicative to start a research task on one day and continue the same research later on.

### 6.  Instruction objections

The Forest Service also objects to hours where it says the emphasis was on instruction, rather than advancing the litigation. Other courts have reduced hours for law students and new attorneys because "unlike a law clerk in a law firm, which must justify its bills to its clients, there is no similar economic restraint for law student research in a law school clinical setting." *Nkihtaqmikon v. Bureau of Indian Affairs*, 723 F. Supp. 2d 272, 282 (D. Me. 2010). Similarly, this court has reasoned that "it is unreasonable to shift the total financial burden of training new counsel onto the government." *Harden v. Comm'r Soc. Sec. Admin.*, 497 F. Supp. 2d 1214, 1216 (D. Or. 2007), *abrogated on other grounds by Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012). Accordingly, the Forest Service objects to various entries in which the law students met with Mr. Buchele; followed up on assignments; and drafted memoranda. The Forest

18

Service further objects to 27.9 hours Mr. Buchele spent meeting with students and reviewing their work, and participating in a group discussion.

LOWD responds that it already eliminated time where the primary emphasis was on education. Buchele Decl. [44] at 5–7. The clinic functions both as an educational opportunity for the students and as counsel for nonprofit groups such as LOWD; in the latter role, the clinic functions much as any legal nonprofit, with senior attorneys supervising junior staff. *Id.* Mr. Buchele asserts that student and fellow work actually saves money because the rate for law students and legal fellows is substantially reduced. *Id.*

For the reasons LOWD offers, I find that the law student and legal fellow hours are reasonably billed to the government. The edited time entries reflect no more than the usual law clerk tasks, which the Ninth Circuit has held are recoverable. *See Nadarajah*, 569 F.3d at 918. In this case, LOWD does not seek to shift the financial burden of training; instead, it seeks only to recover the time its students spent directly representing LOWD.

### 7.   NFMA-arguments objection

The Forest Service asks the court to apply a 15% reduction to account for time LOWD spent on its NFMA arguments and for time spent before it filed its complaint.

Hours expended on unrelated, unsuccessful claims should not be included in the fee award. *Hensley*, 461 U.S. at 440; *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir.2001). Claims are "unrelated" if they are "entirely distinct and separate from the claims on which the plaintiff prevailed." *Sorenson*, 239 F.3d at 1147 (quotation marks and citation omitted). Where a lawsuit consists of related claims, a plaintiff . . . should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440.

The Forest Service points that at oral argument, I indicated I was not impressed by the strength of LOWD's NFMA argument. Thus, it argues, I should not award fees for time spent on that claim.

LOWD's response is two-fold. First, it argues that its NFMA claim was not distinct, because it arose out of the same facts. Complaint [1] at ¶ 4. Second, LOWD contends that its NFMA claim succeeded: LOWD received all the relief it requested, including relief consistent with its NFMA-based legal challenges. Buss Supp. Decl. [75], Ex. 2. Furthermore, LOWD notes that because the Forest Service withdrew the Decision Memo, LOWD did not have the opportunity to further investigate and argue its NFMA claim.

I hold that LOWD may recover for hours spent on the NFMA claim. The parties resolved this case in LOWD's favor after the preliminary injunction. No claim was "unsuccessful." It is axiomatic that a court's analysis of the strength of claim at the preliminary injunction stage should not be viewed as any ultimate decision on the merits.

### 8.    Objections to hours spent before the complaint

In support of the 15% reduction, the Forest Service also argues that LOWD spent an excessive amount of time on the Complaint and on activities prior the Complaint. It points out that LOWD spent 153.6 hours on the case prior to filing its Complaint.

LOWD contends the "excessive" objection is too vague; the Forest Service does not explain why that time was excessive. LOWD's pre-complaint work included tasks recognized in *Goodman* as "among the most important an attorney performs in any litigation," 2008 WL 4000442, at *4, as well as work in preparation for the motion for preliminary injunction. Becker Supp. Decl. [78] at 9. Its expert maintained that those hours were reasonable. *Id.*

The Forest Service's brief objection is not sufficient to overcome LOWD's expert testimony on the reasonableness of its pre-Complaint hours. Thus, I find that the pre-Complaint hours were not excessive.

In sum, I decline to award fees for the following total hours:

| Name | Hours |
|------|-------|
| Buchele | 1.4 |
| Buss | 0.4 (at the 2017 rate) |
| Chillemi | 5.5 |
| DeRoy | 3 |
| Sumner | 0.5 |

### C. Hours Spent on the Attorney Fees Petition

LOWD also requests fees for the time it spent litigating its attorney fee petition. The prevailing party may recover for time spent on "fees on fees" work. *Comm'r, INS v. Jean*, 496 U.S. 154, 162, 164 (1990).

The Forest Service argues that I should reduce LOWD's fee petition hours to the extent I reduce LOWD's fee requests, because LOWD should not recover for unsuccessful arguments. *See Hensley*, 461 U.S. at 440. The Forest Service also objects to some of LOWD's fee petition hours on administrative, conference, duplicative, and instruction grounds. *See* Resp. [69], Ex. C.

I find LOWD's fee petition hours generally reasonable. LOWD largely prevails on its attorney fee request. To the extent some of its arguments are unsuccessful, those arguments are inseparable from those on which it prevailed. *See LOWD*, 2014 WL 3546858, at *8 (declining to reduce award where the time spent was "so interrelated between the successful and unsuccessful claims that it cannot be separated."). I have reviewed the Forest Service's line-item objections to the fee petition hours, and included the improper hours in the charts above. *See* Section B.

### D. Experts

21

LOWD requests expert fees for its attorney fee experts Karl Anuta, Dave Becker, Ralph Bloemers, Scott Jerger, and Scott Thompson. Its expert fee request totals $13,819.25. Corrected Reply [82] at 29.[2]

The Forest Service argues that LOWD cannot recover any of these fees. The EAJA allows recovery of expert fees, but establishes an upper limit on an expert's rate: "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A)(i).

The Forest Service hired one expert who provided his declaration at no cost. Fite Decl. [71] at 1. So, the Forest Service contends, the "highest compensation for expert witnesses" paid by the United States is $0/hour. Few courts have applied this provision, but at least one case in this district limited fees to the rate paid by the United States. *See Or. Nat. Desert Ass'n v. Vilsack*, No 2:03-CV-1871-HA, 2013 WL 3348428, at * 7 (D. Or. July 2, 2013).

In response, LOWD presents text-based and purpose-based arguments. First, it contends that since the United States received its expert declaration for free, no expert was "paid by the United States," and therefore the provision does not apply. *Cf. Hells Canyon Pres. Council v. U.S. Forest Serv.*, No. 00-755-HU, 2005 U.S. Dist. LEXIS 15311, at *17–18 (D. Or. Mar. 7, 2005) (awarding expert fees where "[t]here is no record of the compensation paid to any expert witness by the United States in this litigation").  Second, LOWD argues that to award zero expert fees would contradict the purpose of the EAJA, enacted to "diminish the deterrent effect of seeking review" by allowing for attorney fees under some circumstances. *See* 5 U.S.C. § 504 Note.

---

[2] My calculation of LOWD's total expert fee was higher, but I will use the lower number LOWD states in its Reply.

I agree that the provision is strange. For one, its effect seems at odds with the broad purpose of the EAJA: a hypothetical plaintiff could hire the qualified experts necessary to win its case, but receive no compensation because the United States managed to hire a single inexperienced expert for $0.01/hour. As courts have read the provision, it places no minimum on the quality or usefulness of the United States's lower-cost expert. See *ACE Const., Inc. v. United States*, 81 Fed. Cl. 161, 171–172 (2008) (applying the statute's "plain, mandatory terms" to significantly reduce an expert's otherwise "very reasonable, even modest" rate). It is possible to read the provision to merely limit recovery to the compensation the United States has paid in *any* litigation, but no court has read it that way, and LOWD does not make that argument.

In the end, I must apply the statute's plain terms. I am not persuaded by LOWD's argument that the provision does not apply because the United States paid nothing—it would be absurd if the provision applied where the government paid $0.01/hour, but not $0/hour.[3] Instead, I find that the United States "paid" $0/hour. This case is distinguishable from *Hells Canyon*, where there was no record of the United States's expert compensation. *See* Fite Decl. [71] at 1. Finally, while the provision may conflict with the broad purpose of the EAJA, awarding expert fees in this case would conflict with the narrowly-defined intent of the provision: to restrict the recoverable expert rate to the rate paid by the United States.[4]

## III.  Costs

---

[3] While few courts have applied this provision, at least one noted the ambiguity that might arise if the United States called no expert at all. *See Olympic Marine Servs., Inc. v. United States*, 792 F. Supp. 461, 471 n.19 (E.D. Va. 1992).

[4] This leaves open the possibility that the United States could seek to prevail in environmental litigation by never paying its experts, and forcing advocacy groups like LOWD to calculate in advance that they will not be able to pay, and therefore will be unlikely to retain, their own experts. Because expert testimony is typically critical to environmental litigation, this *sub rosa* elimination of plaintiffs' experts could be an inappropriate windfall to the government. Should that future problem arise, however, there are litigative solutions available, independent of statutory text. Perhaps more fundamentally, courts and commentators have often noted that the best way to promote change in unwise or unworkable statutes is to apply them.

EAJA authorizes an award of "costs" as enumerated in 28 U.S.C. § 1920 and "other expenses" normally billed to a client. *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). LOWD requests $566.07: $400 for "fees of the clerk" and $166.07 for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Amended Bill of Costs [52].The Forest Service initially objected to the Amended Bill of Costs on the grounds that the Court had not yet found that LOWD was the prevailing party. Obj. to Amended Bill of Costs [56]. I have now found that LOWD was the prevailing party. *See* Section I. I award $566.07 in costs.

## CONCLUSION

In sum, I GRANT in part and DENY in part LOWD's Motion for Attorney Fees [43] and GRANT its Amended Bill of Costs [52]. I award the following hours at the following rates, for a grand total of $182,658.66 in attorney fees. In addition, I award $566.07 in costs.

| Name | Hourly rate | Hours | Totals |
|---|---|---|---|
| Buss | 2016: $192.68 | 2016: 150.90 | $50,210.66 |
| | 2017: $196.79 | 2017: 107.40 | |
| Buchele | $475 | 195.00 | $92,625.00 |
| Earthrise legal fellows | $140 | 110.90 | $15,526.00 |
| Earthrise law students | $130 | 186.90 | $24,297.00 |
| Experts | $0 | 31.35 | $0.00 |
| | | **Grand total:** | $182,658.66 |

IT IS SO ORDERED.

DATED this 30th day of March, 2018.

*/s/Michael W. Mosman*
_____
MICHAEL W. MOSMAN
Chief United States District Judge